OPINION OF THE COURT
Elliott Golden, J.
In this motion to suppress physical evidence, obtained from the premises of his automobile salvage business, the defendant questions the constitutionality of subdivision 5 of section 415-a of the Vehicle and Traffic Law (the vehicle dismantlers law), and the manner in which the police engaged in the inspection of the defendant’s junkyard under color thereof. As a consequence of such inspection and the resultant seizure of certain stolen automobile parts found therein the defendant has been indicted and charged with several counts of grand larceny and criminal possession of stolen property, and with forgery of a vehicle identification number.
A hearing was conducted before me on March 14, 1979. The People’s case was presented through the testimony of the arresting officer, Detective Elias Slatnick of the Automobile Squad Special Investigations Division; the defendant’s case consisted of the testimony of Sergeant William Shukofsky of the 76th Precinct. Each witness was frank and candid. Their *964 testimony offered no serious inconsistencies or contradictions to each other, and was credible.
FINDINGS OF FACT
At about 9:00 a.m. on March 20, 1978, a business day, Detective Slatnick assigned to the Auto Squad Special Investigations Division and five other police officers visited defendant’s premises, located at 400 Carroll Street in this county, for the announced purpose of inspecting defendant’s business premises and the records which defendant, a licensed dismantler, was required to maintain pursuant to the provisions of section 415-a of the Vehicle and Traffic Law. The defendant, seeking verification of the officers’ identity and authority, telephoned the 76th Precinct. Sergeant Shukofsky of that precinct responded to the defendant’s premises and advised the defendant that such persons were in fact police officers; that by virtue of the fact that defendant was a secondhand dealer and required to maintain a secondhand book (dismantler’s book), such book was subject to verification and inspection; and that no search warrant was required.
Thereupon the police officers, without any disruption of the normal business activities, conducted an inspection of the defendant’s premises and observed various automobile parts and components located therein. The police made spot checks against the defendant’s dismantler’s book and with respect to questioned parts.
Detective Slatnick then left the premises to verify the information obtained by means of telephone calls and com-, puter checks through the National Auto Theft Bureau, and upon his return the defendant was placed under arrest. A taillight assembly located on a shelf near where the defendant was standing at the time of his arrest was also observed by the officer who again left the premises to check it out.
In all, various parts and components from four stolen automobiles were seized. Some of the items recovered were listed in the defendant’s record book. One item, a Cadillac transmission, was listed under an altered number.
CONCLUSIONS OF LAW
Defendant alleges that the warrantless search of his premises exceeds the scope of authority given the police officers within the meaning of section 415-a of the Vehicle and Traffic *965 Law; that the statute merely authorized an inspection of defendant’s record book, and hence the search without his consent was unlawful. He urges that a statute which on one hand would permit a warrantless search for incriminating evidence, and which on the other hand, subjects him to penal sanctions for refusal to permit such search, is unconstitutional.
The People argue that the inherent nature of defendant’s business and the legislative authority given police officers to inspect pursuant to section 415-a of the Vehicle and Traffic Law authorizes the seizure of contraband as incident thereto and is an exception to the general rule of proscribed warrant-less searches. Furthermore, they contend that the defendant voluntarily consented to the search of his premises.
Defendant seeks judicial enforcement of his right against unreasonable search and seizure by means of the exclusionary rule. This rule primarily rests on the judgment that the importance of deterring police conduct that may invade constitutional rights of individuals outweighs the importance of securing the conviction of the specific defendant on trial. (Mapp v Ohio, 367 US 643; see, also, United States v Caceres, 440 US 741.) Accordingly, if a due process violation is concluded by this court, the fruits of that illegality must be suppressed.
It is axiomatic that a search warrant issued upon probable cause is not required where a search is conducted pursuant to consent. (Schneckloth v Bustamonte, 412 US 218.) However, it is equally basic that the court is required to indulge every reasonable presumption against the waiver of constitutional rights guaranteed by the Fourth Amendment. (Green v United States, 355 US 184; Johnson v Zerbst, 304 US 458.)
A prosecutor seeking to rely upon consent to justify the lawfulness of a search has the burden of proving by clear and convincing evidence that the consent was unequivocally, voluntary and freely given. (Schneckloth v Bustamonte, supra; Bumper v North Carolina, 391 US 543; see, also, People v Berrios, 28 NY2d 361; People v Whitehurst, 25 NY2d 389.)
While the defendant did not refuse to permit the police officers to conduct the search, nevertheless this court agrees with the defendant that he did not voluntarily consent thereto. The record is clear that the defendant allowed Detective Slatnick and his fellow officers to search without a *966 warrant because he was advised by Sergeant Shukofsky that one was not required. Additionally, the totality of circumstances, including the fact that defendant called for verification of the authenticity of the plainclothes police officers, and their reference to section 415-a of the Vehicle and Traffic Law as their authority to inspect, persuades this court to conclude that defendant’s consent to the search was merely a reluctant acquiescence and submission to authority. Accordingly, the legality of the search and seizure in the instant case must stand or fall upon statutory authorization. (See 3 La Fave, Search and Seizure, § 10.2, pp 218-219.)
The defendant having not consented to the search, the initial burden of going forward to show the legality of police conduct is upon the People; however, it is the accused, not the People who must shoulder the burden of persuasion on a motion to suppress evidence. (People v Di Stefano, 38 NY2d 640, 652.) To meet their initial burden the People rely upon section 415-a of the Vehicle and Traffic Law.
The enactment of section 415-a of the Vehicle and Traffic Law (L 1973, ch 225) reflects a clear legislative recognition of the necessity for a statutory procedure for the supervision and control of a type of business prone to criminal improprieties. The provisions thereof seek to insure that a person, such as the defendant, who is engaged in the business of buying motor vehicles for the purpose of dismantling them for parts or for reselling them as scrap, be registered. The requirements for registration place heavy emphasis on the fitness of the applicant to engage in such business when measured against any prior arrests and convictions, particularly as they may relate to the illegal sale or possession of a motor vehicle or motor vehicle parts. Equal concern is given to any individual having a financial interest in such business. The statute mandates the keeping of certain records and the authority for inspection thereof by designated officials. Sanctions for violations of the statute include both civil and criminal penalties.
Subdivision 5 of section 415-a of the Vehicle and Traffic Law provides for record keeping and inspection as follows: "5. Records. Any records required by this section shall apply only to vehicles or parts of vehicles for which a certificate of title has been issued by the commissioner or which would be eligible to have such a certificate of title issued. Every registrant shall maintain a record of all motor vehicles, trailers, or major component parts thereof, coming into his possession *967 together with a record of the disposition of any such motor vehicle, trailer or parts thereof. Such record shall be maintained in a manner prescribed by the commissioner. In addition, a registrant shall maintain proof of ownership for any motor vehicle, trailer or major component parts thereof while in his possession. Such records shall be made immediately available upon request during usual business hours, to any employee designated by the commissioner and to any police officer. The failure to produce such records as required by this subdivision shall be a class A misdemeanor.”
It cannot seriously be doubted that this legislation is rationally related to legitimate social and law enforcement objectives. The legislative intent as enunciated through the statutory arm of section 415-a of the Vehicle and Traffic Law is neither violative of the defendant’s due process rights nor of his Fourth Amendment right to be free from unreasonable searches and seizures.
The State Department of Motor Vehicles in its memorandum accompanying the passage of the law, observed that its "primary requirement is to provide a system of record keeping so that vehicles can be traced through junk yards and to assure that such junk yards are run by legitimate business men rather than by auto theft rings.” (NY Legis Ann, 1973, p 288.)
The defendant contends that recent decisions of the United States Supreme Court inhibiting the Government’s use of evidence discovered in the course of warrantless administrative inspections and searches, requires the suppression of the physical evidence seized herein, citing Michigan v Tyler (436 US 499), Marshall v Barlow’s Inc. (436 US 307), and Camara v Municipal Ct. (387 US 523). While these cases set forth the general rule that warrantless administrative searches are not constitutionally permissible, they each clearly except from such general rule "certain carefully defined classes of cases” in which warrantless administrative searches may be made even without consent provided the entry upon the premises is effectuated without the use of force.
The District Attorney urges that the warrantless inspection in the case at bar, with the resulting seizure of allegedly stolen automobile parts, was permissible as being within the exception afore-mentioned, and furthermore, that the specific seizure of the taillight assembly observed on a shelf near where the defendant was standing at the time of his arrest *968 was constitutionally permissible under the "plain view” doctrine.
It is this court’s view that the warrantless search of the defendant’s business premises, under the authority of section 415-a of the Vehicle and Traffic Law and the seizure of the allegedly stolen automobile parts found therein, as well as the seizure of the taillight assembly, were legal.
As regards section 415-a of the Vehicle and Traffic Law and the exception to the rule that warrantless administrative searches are constitutionally impermissible, the United States Supreme Court has upheld such warrantless searches for "pervasively regulated” businesses and for "closely regulated” industries "long subject to close supervision and inspection” (United States v Biswell, 406 US 311; Colonnade Corp. v United States, 397 US 72).
As stated in Marshall v Barlows, Inc. (supra, p 313), with reference to the Colonnade-Biswell type exception: "These cases are indeed exceptions, but they represent responses to relatively unique circumstances. Certain industries have such a history of government oversight that no reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 351-352 (1967), could exist for a proprietor over the stock of such an enterprise. Liquor (Colonnade) and firearms (Biswell) are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.”
Other industries have similarly been exempted under the Colonnade-Biswell doctrine.[1]
While it is well settled that a businessman’s private commercial property is entitled to Fourth Amendment protection (See v City of Seattle, 387 US 541; People v Spinelli, 35 NY2d 77); it is equally clear that a businessman engaged in licensed and regulated enterprise accepts the burden as well as the benefits of his trade. "The businessman in a regulated industry in effect consents to the restrictions placed upon him” (Almeida-Sanchez v United States, 413 US 266, 271).
It is this court’s view that the defendant’s type of business is the subject of, and historically has mandated, close regulation and is clearly one of those carefully defined classes of *969 cases engendering a history of governmental oversight, and being a pervasively regulated business is excepted from search warrant requirement.
Vehicle dismantlers are part of the junk industry as well as part of the auto industry. (Cf. Highway Law, § 89, subd 1, par [c]; 17 NYCRR 157.1 [h] [i].) Prior to the enactment of section 415-a of the Vehicle and Traffic Law, auto dismantlers were subject to regulatory provisions governing the licensing and operation of junkyards. These regulations included provisions mandating the keeping of detailed records of purchases and sales, and the making of such records available at reasonable times to designated officials including police officers, by junk dealers (Administrative Code of City of New York, § B32-123.0) and by dealers in secondhand articles (Administrative Code, § B32-132.0). (See People v Ruggieri, 85 Misc 2d 141, 142, 145; People v Spinelli, 77 Misc 2d 559, 561.)
These regulatory, record keeping and warrantless inspection provisions for junk shops have been a part of the law of the City of New York and of Brooklyn for at least 140 years.[2]
Although section 415-a of the Vehicle and Traffic Law authorizes administrative inspection of books and records upon the premises wherein the dismantling business is conducted, nevertheless the mere existence of a valid regulatory scheme in and of itself cannot derogate constitutional safeguards against unreasonable searches and seizures. To be considered reasonable the authority to inspect the records, with its attendant implied authority to physically inspect the premises for verification thereof, must be carefully limited in time, place and scope (cf. People v Rizzo, 40 NY2d 425). The time and manner of the entry onto the defendant’s premises herein was clearly reasonable.
It is unavailing for defendant to contend that only his records but not his inventory were subject to inspection. The *970 purpose of the record keeping is to insure that vehicles or the parts thereof are lawfully dealt with, hence deterring the acquisition and disposition of stolen items. Without the ability to substantiate statutory compliance by visual examination of the defendant’s inventory, the intent of the statute, requiring the keeping of the records would be frustrated if not rendered entirely nugatory.[3] Furthermore, defendant’s reliance upon People v Laverne (14 NY2d 304) cited and considered in defense counsel’s supplemental memorandum of law, has little application under the facts of this case.
In determining whether the penal sanctions imposed under subdivision 5 of section 415-a of the Vehicle and Traffic Law for failure to produce such records passes the constitutional mandate of due process, the following must be considered:
The performance required under the statute must be set forth with sufficient clarity, and not be so vague, so that a person of common intelligence can ascertain its meaning; and it must be sufficiently explicit to inform those subject to it what conduct would render them liable. That is, it must be informative on its face giving unequivocal warning of what should be done. Cast in this light this statute gives adequate notice of what is required of a person operating a business such as this defendant. Furthermore, it is to be noted that the instant statute carries with it the strong presumption of validity (People v Pagnotta, 25 NY2d 333), and that the Legislature has found facts indicating a need for its enactment (see Matter of Taylor v Sise, 33 NY2d 357).
This court is of the opinion that inspection for compliance with the dismantlers law poses only a limited threat to defendant’s expectations of privacy.
As to the taillight assembly: A search without a warrant is lawful if incident to a lawful arrest and if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest (Stoner v California, 376 US 483). The lawfulness of the search depends upon the existence of probable cause to arrest (People v Brown, 24 NY2d 421). The court finds that just prior to the observation and seizure of the taillight assembly, there being probable cause therefor, the defendant was lawfully arrested; and that the taillight assem *971 bly, in plain view, was, and. legally could be, seized as incident to such arrest (People v Brosnan, 32 NY2d 254).
When a person engages in a business such as defendant’s, which is a pervasively regulated one, operable only by licensees, he does so with the knowledge that his business records and inventory will be subject to effective inspection (United States v Biswell, 406 US 311, supra).
During the course of the inspection, and prior to his arrest, the defendant conversed with the police officers and made certain statements concerning items being inquired into. Defendant’s contention that he should have been given Miranda warnings (Miranda v Arizona, 384 US 436) is without merit. Such warnings were not necessary as defendant was not in custody, nor was there present at any time an aura of custodial interrogation prior to defendant’s arrest (see Matter of Kwok T., 43 NY2d 213; People v Yukl, 25 NY2d 585; see, also, Oregon v Mathiason, 429 US 492; Spahr v United States, 409 F2d 1303, cert den 396 US 840).
The defendant’s motion to suppress is denied in all respects.
The court wishes to acknowledge and express its sincere appreciation to both the District Attorney and defense counsel for their excellent presentations in this matter, and for the fine memoranda furnished by each of them in support of their contentions.

. Cigarette traffic, People v Rizzo (40 NY2d 425); controlled drugs United States ex rel. Terraciano v Montanye (493 F2d 682, cert den 419 US 875); and automobile junkyards, People v Ruggieri (85 Misc 2d 141); People v Spinelli (77 Misc 2d 559).

. By-laws and ordinances of the City of New York, revised 1838-1839 (tit III, §§ 5, 6); an act to Consolidate the Cities of Brooklyn and Williamsburgh and the Town of Bushwick (L 1854, ch 384, tit II, § 13, subd 4); the Charter of the City of Brooklyn, 1857 (§ 13, subd 4); ordinances of the City of New York, 1859 (§§ 28, 29); Charter of the City of Brooklyn, 1873 (tit II, § 13, subd 4); Charter of the City of Brooklyn, 1888 (§ 26); general ordinances of the City of New York, 1904 (§§ 554, 555); Code of Ordinances of the City of New York, 1907 (§§ 335, 342); the Code of Ordinances of the City of New York, 1915 (§§ 123, 124); Administrative Code of the City of New York, 1937 (§§ B32-123.0, B32-132.0). (See, also, Matter of Picone v Commissioner of Licenses, 241 NY 157, 159; People v Guilianti, NYLJ, June 4, 1979, p 42, col 1; Muhlstein v New York City R. R. Co., 95 Misc 214, 217-218.)

. While not raised by either party herein, the court also noted the statutory authority given to the Police Commissioner under section 436 of the New York City Charter to supervise junkshop keepers, including the authority to inspect their business premises and any articles of merchandise in their possession.