OPINION OF THE COURT
Joseph J aspan, J.
The defendants Juan E. Garcia, Anthony M. Garcia, Isidore Garcia, Raymond Newman (and another) are charged in Indictment No. 1438-81 with multiple counts of criminal possession of stolen property in the first degree and illegal possession of a V.I.N. (Vehicle Identification Number) plate. The defendants are all related to each other.
The physical evidence supporting the charges was seized on May 11, 1981 and May 12,1981 upon the execution of a search warrant which commanded a search of the premises of the Long Island Trailer Sales and Service, Inc., at 61D North Street, Manorville, for “stolen motor vehicles, stolen trailers *** illegally possessed V.I.N. tags” and books and records related thereto. Immediately prior to obtaining the search warrant Detective Robert Gately and his part *551 ner, a Detective Pearsall, had conducted a limited warrantless inspection of the Long Island Trailer premises allegedly in the company of and with the consent of Joseph Garcia.
Defendants Juan E. Garcia, Anthony M. Garcia, Isidore Garcia and Raymond Newman move to suppress the evidence noted or obtained during that inspection and any evidence thereafter seized upon the grounds that the inspection constituted an illegal and unreasonable search and therefor information derived therefrom may not support the subsequent application for a search warrant. It is further alleged that any evidence obtained upon the execution of the search warrant was the “poisoned fruit” of that prior illegal warrantless search.
Further challenges are directed to the accuracy and sufficiency of the application for the search warrant.
Juan Garcia also moves to dismiss the charges as against him upon the ground that there was no probable cause to arrest him.
The District Attorney contended at the hearing that the defendants do not possess the requisite standing to challenge the afore-mentioned inspection and subsequent search and that, in any event, the limited warrantless inspection was with the consent of Joseph Garcia and formed a sufficient predicate for the application for the warrant.
A hearing was held with respect to the controlling events and the court now makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
On or about May 9, 1981 the police received a telephone call from an unidentified man who said he was a trucker whose trailer had been stolen. From information gathered via the “grapevine” he went to and saw his trailer on the premises of a company known as Long Island Trailer Sales and Service on North Street in Manorville and effected its return to him after he threatened to call the police.
Two days later, on May 11, 1981, during regular business hours, Detectives Gately and Pearsall of the Suffolk *552 County Auto Theft Squad, energized by the foregoing information, visited those premises.
When they arrived at the location they saw an open lot with dimensions of about 200 feet by 200 feet enclosed by a chain link fence and fronted in part by a building which served as an office and garage. Within the property they could see trailers, some of which were cut up with parts strewn about the premises.
Access to the yard itself was available only through a door located in the rear of that building.
Detectives Gately and Pearsall entered the Long Island Trailer offices and after identifying themselves advised Joseph Garcia that they wished to speak with the owner and inspect the business’ dismantlers license and books. Mr. Garcia told the police that he was the manager and that the owner, one Raymond Raimondi, was in Florida and had the books with him. Upon a request, Joseph Garcia further advised that Raimondi had made application for a dismantlers license and that it had not yet been issued.
Subsequent investigation disclosed that Raimondi was an alias used by Joseph Garcia and that no such application had been filed.
At this time defendant Isidore Garcia was in the front parking lot and defendants Raymond Newman and Anthony Garcia were working on the premises.
The detectives then asked for permission to inspect the rear yard. A factual dispute as to whether such consent was granted was the subject of testimony by several witnesses.
I find that Joseph Garcia, purporting to be the manager of the business and apparently the person legally capable of doing so, consented to the inspection and accompanied the detectives.
During the course of the inspection, Detective Pearsall noted the presence of an abundance of trailer parts and a number of tractor trailers in various stages of repair. They observed that vehicle identification tags had been removed from some of these vehicles and in particular Detective *553 Pearsall noted that an altered V.I.N. tag was affixed to a “Clark” trailer. The police concluded that this was probably a “chop shop” which received and then stripped or otherwise altered the physical features of stolen trailers. They ascertained the true V.I.N. number from the body of the “Clark” trailer and the detectives immediately attempted to check the number with the central computer. The computer was out of service at that time and the detectives left the premises.
On the afternoon of May 11, Detective Gately was able to determine that the altered V.I.N. tag was affixed to a trailer that had been reported stolen in New Jersey that very day.
Upon receipt of this information and because of it, Detectives Gately and Pearsall returned to Long Island Trailer to speak to someone. They were advised by one Billie Jo Koch, the secretary, that everyone had left. When asked to contact Joseph Garcia, Ms. Koch stated that she did not know where he was and that she could not contact him.
A search warrant was obtained and executed at the Long Island Trailer premises on the evening of May 11,1981 and continued through May 12, 1981, resulting in the identification of four allegedly stolen trailers and two V.I.N. plates not affixed by the manufacturer or in accordance with law.
As a result the named defendants were arrested and indicted. Joseph Garcia cannot now be located.
Defendant Juan E. Garcia was not present at the Long Island Trailer premises on either May 11 or May 12 and his first contact with the police did not occur until June 5,1981 at which time he was arrested pursuant to a warrant. His arrest stemmed from an inspection of the books and financial records of the company which revealed that on occasions he signed checks and paid the rent on its behalf.
CONCLUSIONS OF LAW
The threshold question is whether Detectives Pearsall and Gately needed the consent of Joseph Garcia to conduct their warrantless inspection of the premises and if needed whether such consent was freely given.
(a) THE STATUTORY AND CONSTITUTIONAL BASIS FOR THE INTRUSION
*554 It is axiomatic that the Fourth Amendment protects commercial establishments as well as private homes from unreasonable searches unless it has been authorized by a valid search warrant based upon probable cause (see Camara v Municipal Ct. of San Francisco, 387 US 523) or unless some recognized exception to the warrant requirement applies (see See v City of Seattle, 387 US 541).
Such an exception to the warrant requirement has been recognized for “pervasively regulated” businesses (United States v Biswell, 406 US 311; Marshall v Barlow’s, Inc., 436 US 307) and.for “closely regulated” businesses “long subject to close supervision and inspection” (Colonnade Catering Corp. v United States, 397 US 72).
In this regard certain industries such as liquor (Colonnade Catering Corp. v United States, supra) and firearms (United States v Biswell, supra) have such a history of governmental regulation that no owner thereof could have an expectation of privacy over the stock of his business (see Katz v United States, 389 US 347). Indeed, “when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to the full arsenal of governmental regulation” (Marshall v Barlow’s, Inc., supra, p 313).
In the instant case, it is equally clear that not only does the State have a legitimate interest in supervising a vehicle dismantlers business but by the enactment of section 415-a of the Vehicle and Traffic Law and the amendments thereto the State has unequivocally indicated that it considers such business to be within the class of “pervasively regulated” industries (People v Tinneny, 99 Misc 2d 962; cf. People v Sylvester, NYLJ, Nov. 20, 1981, p 6, col 4).
As originally enacted, subdivision 5 of section 415-a of the Vehicle and Traffic Law (L 1973, ch 225) entitled “Vehicle dismantlers and other persons engaged in the transfer or disposal of junk and salvage vehicles” provided for registration and the maintenance of a-record of all motor vehicles, trailers, or major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or parts thereof. It further provided that “a registrant shall maintain proof of ownership for any motor vehicle, trailer or *555 major component parts thereof while in his possession. Such records shall be made immediately available upon request during usual business hours, to any employee designated by the commissioner and to any police officer. The failure to produce such records as required by this subdivision shall be a class A misdemeanor.”
The State Department of Motor Vehicles memorandum accompanying this passage of the law stated that its “primary requirement is to provide a system of record keeping so that vehicles can be traced through junk yards and to assure that such junk yards are run by legitimate businessmen rather than by auto theft rings” (NY Legis Ann, 1973, p 288).
In People v Tinneny (99 Misc 2d 962, supra), a junkyard was searched without a warrant. The court, relying on Marshall v Barlows, Inc. (supra), refused to suppress the evidence seized, holding (pp 968-969): “It is this court’s view that the defendant’s type of business is the subject of, and historically has mandated, close regulation and is clearly one of those carefully defined classes of cases engendering a history of governmental oversight, and being a pervasively regulated business is excepted from a search warrant requirement.”
Effective September 1, 1980, subdivision 5 of section 415-a of the Vehicle and Traffic Law was amended (L 1979, ch 691) to reflect the holding in Tinneny (supra) and to expressly permit warrantless searches of junkyards as an integral part of police inspection of the business’ books and records. The amended statute now provides in relevant part: “(a) * * * Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession * * * Upon request of an agent of the commissioner or of any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles *556 which are subject to the record keeping requirements of this section and which are on the premises * * * The failure to produce such records or to permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor.” (Emphasis added.)
The Governor’s memorandum approving the enactment (NY Legis Ann, 1979, p 417) further indicates that the State intended close regulation and inspection of this industry and that those engaged in such business must forego the expectations of privacy attendant to nonregulated industries. It reads in part as follows:
“[T]his bill *** amend[s] sections of the Vehicle and Traffic Law with respect to regulating the activities of persons engaged in the transfer, sale or disposal of junk and salvage vehicles and automotive parts. * * *
“By making it difficult to traffic in stolen vehicles and parts, it can be anticipated that automobile theft problems will be decreased and the cost to insurance companies and the, public may be reduced.
“The bill provides for an effective date of April 1,1980 to permit necessary changes to be made in procedures to be followed by the Department of Motor Vehicles and to permit the businesses involved to become totally familiar with and adopt the procedures required.” (Emphasis added.)
It is this court’s conclusion, without reaching the issue of consent, that the police were justified in making the inspection which revealed sufficient information to support an application for the search warrant.
(b) CONSENT
A police search may be based upon the actual consent of a person reasonably appearing to have the requisite degree of access to and control Over the premises to be searched (People v Henley, 53 NY2d 403).
The totality of the circumstances establish that Joseph Garcia had apparent authority to consent to the search and that he gave it freely and not as a result of any coercion. The police were justified in relying upon it.
*557 (c) STANDING
A defendant charged with a possessory crime may only contest an allegedly illegal search and seizure if he had a “legitimate expectation of privacy” in the area searched (United States v Salvucci, 448 US 83; People v Ponder, 77 AD2d 223, affd 54 NY2d 160). A property interest in the premises does not, by itself, establish that expectation of privacy and will not form the basis for standing on a motion to suppress (Rakas v Illinois, 439 US 128).
These rules create an anomalous situation in this case.
The defendant Juan Garcia denies any interest in the subject premises or the activities of Long Island Trailer Sales and Service, Inc., and acknowledges a lack of standing. The District Attorney, on the other hand, urges that this defendant participated in the business to an extent evidencing dominion and control and participation sufficient to make him want to conceal the alleged criminal activity.
Similarly, the defendants claim that Isidore Garcia was a visitor at the premises, Anthony Garcia, a workman, that Raymond Newman merely made estimates of the cost of repairs and that only the missing Joseph Garcia sometimes known as Ray Raimondi was the boss. The testimony of Detective Robert Gately is to the effect that defendant Isidore Garcia said he was a manager and that the other defendants evidenced meaningful interest and significant roles in the operation.
A resolution of these factual disputes will come at a trial and this court does not and in view of the foregoing conclusions need not reach this issue of standing.
(d) THE SEARCH WARRANT
The police had probable cause to believe crimes were being committed at the premises of Long Island Trailer Sales and Service and adequately set it forth in the application for the search warrant. The court does not find any evidence of perjury or willful misstatement in the application and the motion to controvert the warrant is denied.
(e) PROBABLE CAUSE TO ARREST JUAN GARCIA
Defendant Juan E. Garcia also moves to dismiss the charges upon the grounds that his arrest on June 5, 1981 *558 was not founded on probable cause since he was never at the Long Island Trailer premises on either May 11 or May 12,1981 and there was no evidence to connect him with the operations of the business. In support of his application, the defendant claims that his only association with the business was to pay rent and that he was attempting to buy the business from one “Tully” who he alleges is the owner thereof.
The court need not reach this issue since his subsequent indictment by a Grand Jury served to vitiate any defects inherent in the arrest warrant (see People v Tornetto, 16 NY2d 902; People ex rel. Hirschberg v Close, 1 NY2d 258; People ex rel. Watkins v Lindsay, 28 AD2d 859; People v Laval, 33 AD2d 799).
Accordingly, the defendant’s motion to dismiss the indictment upon the grounds that his arrest was not based upon probable cause is denied.
CONCLUSION
The motion to suppress the evidence seized from the premises of Long Island Trailer Sales and Service, Inc., at 61D North Street, Manorville, is in all respects denied.
The motion to dismiss the indictment as against Juan Garcia is in all respects denied.