*793 OPINION OF THE COURT
Joseph F. Farlo, J.
The following constitutes the findings, conclusions and decision of the court:
A hearing was held before this court on November 19, November 20 and December 4,1981 on defendant’s motion to suppress physical evidence. The court heard testimony from Police Officer Lawrence Andrews, shield No. 7981 assigned to the 113th Precinct, Sergeant Carl Bergstrom, shield No. 2560 assigned to the Auto Crime Division, and the defendant, Thomas Rein. The court finds the testimony of Officer Andrews and Sgt. Bergstrom to be credible and not marred by any serious inconsistencies.
On April 20, 1981, Officer Andrews, who at that time was assigned to the Auto Crime Unit along with Sgt. Bergstrom and two fellow officers, placed the premises known as Jasons Auto Salvage II under observation. The premises consisted of a fenced in yard containing a trailer near the front gate and an enclosed structure known as a garage in the rear. During the approximately one hour while Officer Andrews was watching the yard, he observed the defendants apparently working. He noticed Rein driving a tow truck moving vehicles within the yard. Nieves came from the garage and went to the trailer several times and had conservations with Rein and Camme. Camme was seen in the yard several times and was observed selling a tire to a customer. Officer Andrews obtained a receipt from the individual that had purchased the tire from Camme. After obtaining the receipt, Officer Andrews and his fellow officers entered the yard. Upon entering the yard, Officer Andrews approached Camme, who was in the trailer which Officer Andrews knew to be the office. Officer Andrews asked Camme for the books pertaining to his business including his vehicle register and dismantler’s license. Camme replied that he did not have any, although it appears that later on he did have a register but did not have the dismantler’s license. At that time, Sgt. Bergstrom told Officer Andrews that Rein was going through the rear entrance and leaving the premises. Officer Andrews proceeded to the front of the yard and noticed Rein walking up *794 the block. He grabbed Rein’s arm and escorted him back to the trailer.
Sgt. Bergstrom, meanwhile, went to the rear of the yard where the garage was located. From the door, he observed smoke and a man working on a car. He went inside the garage and saw Nieves working with a torch on a late model Cadillac. In addition, he observed two license plates propped on a workbench. Thinking this was the office, Sgt. Bergstrom noticed no dismantling license and requested that Nieves accompany him to the trailer. Upon arriving at the trailer with Nieves, Sgt. Bergstrom directed Officer Andrews to check out the car and the license plates. Through a computer check, it was determined that the license plates belonged to a stolen Chevrolet, part of which was outside the garage area, the rest inside. After this information was received, the defendants were placed under arrest. Officer Andrews then investigated the Cadillac which Nieves had been dismantling and discovered that the owner was unaware that his car had been stolen.
Based upon this information and his observations, Officer Andrews obtained a search warrant later that night. Officer Andrews and his fellow officers searched the yard until after 9:00 p.m. when it was called off due to darkness. The following day, Officer Andrews with fellow officers returned to the yard and seized various items which were vouchered by him and which are the subject matter of the hearing.
The first issue which has been raised is the constitutionality of section 415-a of the Vehicle and Traffic Law. Defendants argue that a statute which permits a warrant-less search for incriminating evidence or subjects them to penal sanctions for refusal to permit such a search is unconstitutional.
It is axiomatic that the Fourth Amendment protects the defendants’ establishment from unreasonable searches unless based on a valid search warrant or some recognized exception to the warrant requirement (Camara v Municipal Ct., 387 US 523; See v City of Seattle, 387 US 541). While warrantless administrative searches have generally been held to be invalid (see Marshall v Barlow’s Inc., 436 US 307), an exception has been carved out for those indus *795 tries that are closely or pervasively regulated. (United States v Biswell, 406 US 311; Colonnade Corp. v United States, 397 US 72.)
In the instant case, it is clear by the enactment of . section 415-a of the Vehicle and Traffic Law that the Legislature has demonstrated its intention to pervasively regulate the vehicle dismantling industry (People v Tinneny, 99 Misc 2d 962; People v Garcia, 111 Misc 2d 550). It is interesting to note that after the decision in People v Tinneny (supra), the Legislature passed an amendment to section 415-a to allow for inspection of premises of vehicle dismantlers (L 1979, ch 691). It appears that such a quick response to the court decision by the Legislature clearly shows the importance the State government places on the regulation of this industry. As the Governor’s memorandum approving the legislation indicates, “Motor vehicle theft in New York State has been rapidly increasing. It has become a multimillion dollar industry which has resulted in an intolerable economic burden on the citizens of New York * * * By making it difficult to traffic in stolen vehicles and parts, it can be anticipated that automobile theft problems will be decreased and the cost to insurance companies and the public may be reduced” (NY Legis Ann, 1979, pp 416-417).
Counsel for Camme in addition to challenging the issue of whether the auto dismantling industry is “pervasively regulated”, argues that the statute in question is unconstitutional since it requires an individual to choose between a constitutional right and a penal sanction. As was said in People v Tinneny (supra, p 970), “The performance required under the statute must be set forth with sufficient clarity, and not be so vague, so that a person of common intelligence can ascertain its meaning; and it must be sufficiently explicit to inform those subject to it what conduct would render them liable. That is, it must be informative on its face giving unequivocal warning of what should be done. Cast in this light this statute gives adequate notice of what is required of a person operating a business such as this defendant. Furthermore, it is to be noted that the instant statute carries with it the strong presumption of validity (People v Pagnotta, 25 NY2d 333), *796 and that the Legislature has found facts indicating a need for its enactment (see Matter of Taylor v Sise, 33 NY2d 357)”.
In view of the foregoing, it is this court’s conclusion that section 415-a of the Vehicle and Traffic Law is constitutional and that the search was proper.*
The next issue that the court must address is the arrest of Thomas Rein. Rein was forcibly brought back to the yard by Officer Andrews after Officer Andrews determined there was no dismantler’s license, but before he was aware of the discovery of any property which might have been stolen. The Court of Appeals has held that “[w]henever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment * * * This is true whether a person submits to the authority of the badge or whether he succumbs to force” (People v Cantor, 36 NY2d 106, 111).
The police officer must have reasonable suspicion that a person is committing, has committed or is about to commit a crime before he stops a person in a public place. The police officer must indicate specific and articulable facts which, along with any logical deductions, justify such an intrusion (People v Cantor, supra, pp 112-113). It is without question in this case there was a seizure of the defendant Rein. His movements were stopped and he was forcibly removed to the yard when Officer Andrews took him by the arm. It is likewise clear that Office Andrews did not have probable cause or even a reasonable suspicion that Rein had committed a crime. It is clear from the testimony Officer Andrews was aware that Camme was the owner of the yard or at least managed it. Officer Andrews went to Camme immediately when he came into the yard and questioned him about the license. There is no evidence he ever questioned Rein about it or gave any consideration to the thought that Rein could be the manager. Furthermore, from the separate indictment charging Camme alone with a violation of section 415-a of the *797 Vehicle and Traffic Law, it is certain that he is considered by the police and the District Attorney as being the sole owner or manager of the yard.
Having concluded that the initial seizure of the defendant Rein was unlawful, the fruits of that unconstitutional seizure must be suppressed (People v Cantor, supra).
As to the defendant Nieves, the facts are somewhat different. Nieves was observed by Sgt. Bergstrom to be cutting up a relatively new car. There were license plates on the workbench next to the area where Nieves was working. These observations made by an experienced police officer would give rise to probable cause to believe a crime had been or was being committed. Sgt. Bergstrom’s actions in this case in taking Nieves to the office while the plates and automobile he observed were being investigated, were reasonable.
The next issue the court must address is certain alleged irregularities in the search warrant. It appears that the correct address of the yard is 94-04 Merrick Blvd. The search warrant gives the address as 94-40 Merrick Blvd., but also provides the name of the yard as Jasons II Auto Salvage. Technical errors in a portion of the description of the premises to be searched will not invalidate a search warrant if the premises can be identified with reasonable effort and there is no reasonable probability that a search may be made of premises other than those intended to be searched under the warrant (People v Mongno, 67 Misc 2d 815). In this case, it is clear the yard was authorized to be searched and that there was no probability premises other than Jasons II would be searched.
The second irregularity raised is the fact that the search warrant is undated. Whether an undated warrant is valid appears to be a question of first impression in this State.
CPL 690.45 provides in part that a search warrant must contain, “1. The name of the issuing court and the subscription of the issuing judge”. It should be noted that nowhere in the section is it required there be a date on the warrant itself. It appears the only relevant time limitation as to search warrants is contained in CPL 690.30 (subd 1), *798 which states that a search warrant must be executed not more than 10 days after the date of issuance. It has been held that an unintentional dating error does not affect the validity of the warrant (People v Horton, 32 AD2d 707). The fact the supporting affidavit has failed to contain a date has likewise not invalidated a search warrant (People v Pietramala, 84 Misc 2d 496). The date only becomes an issue when a question arises as to whether the warrant was executed within the 10-day period. In this case, the time of execution is not an issue. The testimony of Officer Andrews and Sgt. Bergstrom clearly demonstrates they attempted to execute the warrant the same night it was issued but due to darkness, they were forced to return the following day and executed the warrant at that time. People’s Exhibit No. 6 in evidence, a certified copy of the inventory of property taken pursuant to the warrant, does not contain the date of April 23, 1981 proving a period of only three days elapsed from the time of issuance to the time of filing the inventory.
Since the warrant was issued and returned within the prescribed statutory period, the objection raised by counsel as to lack of a specific date is not justifiable.
In conclusion, the court finds section 415-a of the Vehicle and Traffic Law to be constitutional and, therefore, the warrantless administrative search pursuant to that section to be proper. The search warrant issued is likewise proper and valid. As to the defendant Thomas Rein, the court finds that his arrest violated his constitutional rights and, therefore, the seizure of the property as against him was improper, and the property must be suppressed. As regards the remaining defendants, their motion to suppress is denied in all respects.

 Courts of sister States interpreting similar statutes have reached the same conclusion. (See People v Easley, 90 Cal App 3d 440, cert den 444 US 899.)