OPINION OF THE COURT
Charles H. Cohen, J.
The following constitutes the opinion, decision, and order of the court on a Mapp suppression hearing, following a motion made by defendant.
An indictment has been filed against defendant accusing him of criminal possession of stolen property in the first degree, forgery of a vehicle identification number and violation of section 415-a of the Vehicle and Traffic Law.
Defendant, claiming to be aggrieved by an unlawful search and seizure, has made a motion for an order to suppress various automobile parts set forth in People’s exhibit No. 1 in evidence seized by the police from the premises of A. L. Reliable Used Auto Parts at 97-15 Sutphin Boulevard in Queens County, as well as “observations made by the police inside of his business premises during the search”.
*550 The People assert that this seizure was incidental to a lawful arrest which was made on April 27, 1983 by Police Officer John Salzo at that location following a lawful routine inspection pursuant to subdivision 5 of section 415-a of the Vehicle and Traffic Law and section 436 of the New York City Charter. Defendant maintains that these statutes are unconstitutional* and that the manner in which the inspection was made was in violation of defendant’s Fourth Amendment rights and that, in any event, there was no justification for seizing any property without a search warrant.
A pretrial suppression hearing was conducted before the court.
Subdivision 5 of section 415-a of the Vehicle and Traffic Law reads as follows: “5. Records and identification, (a) Any records required by this section shall apply only to vehicles or parts of vehicles for which a certificate of title has been issued by the commissioner or which would be eligible to have such a certificate of title issued. Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession. Such records shall be maintained in a manner and form prescribed by the commissioner. The commissioner may, by regulation, exempt vehicles or major component parts of vehicles from all or a portion of the record keeping requirements based upon the age of the vehicle if he deems that such record keeping requirements would serve no substantial value. Upon request of an agent of the commissioner or of any police officer and during his regular and usual business *551 hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises. Upon request of any agent of the commissioner and during his regular and usual business hours, a salvage pool, mobile car crusher or itinerant vehicle collector shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises. The failure to produce such records or to permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor.” (Emphasis added.)
FINDINGS OF FACT
On April 27, 1983, at about 11:45 a.m. during regular business hours and while A. L. Reliable Used Auto Parts was open for business, Police Officer John Salzo, assigned to the Auto Crime Division of the Organized Crime Control Bureau, went to its premises at 97-15 Sutphin Boulevard in Queens County. He was accompanied by Sergeant Michael Byrne, his immediate supervisor and two other police officers.
While members of the Auto Crime Division do arrest people for violations of the Penal Law, a principal function of that division is to perform inspections. In accordance with that function, these police officers went to this location at that date and time for the purpose of performing a routine vehicle dismantler’s inspection at those premises which had a sign on the outside stating “A. L. Reliable Used Auto Parts”. They constituted a team which was assigned to inspect facilities such as that of A. L. Reliable Used Auto Parts, which were involved in the resale of vehicle parts, salvage yards and the dismantling of automobiles in accordance with section 436 of the City Charter, as well as in accordance with section 415-a of the Vehicle and Traffic Law. They had no warrant of any kind authorizing this inspection and appeared at these premises without giving any prior notice or checking with the New York State Department of Motor Vehicles or the New York City *552 Department of Consumer Affairs to find out whether A. L. Reliable Used Auto Parts was licensed or had recently been inspected.
These premises of A. L. Reliable Used Auto Parts consisted of a brick building with yards on each side of it, enclosed within chain link fences about 8 to 10 feet high. When these police officers appeared at the premises at that time they found that the doors to the premises were open, with defendant standing behind a counter. From outside the premises one could see vehicles within the premises that were partially dismantled. One of these vehicles was a 1971 Chevy. While these police officers were there, a male black came into the premises to purchase two tires from defendant. Police Officer Salzo informed defendant that the police were there to conduct an inspection. The police showed their badges and the applicable regulations to defendant. The latter stated that he was the general manager and was in charge. He said he had no objection to the police officers performing the inspection. He showed the police officers his certificate of fitness for acetylene torches and his license as a second-hand dealer in auto parts, as a second-hand dealer in vehicles, as a junk shop and as a vehicle dismantler. The registration number on the vehicle dismantler’s license was not displayed.
After inspecting the licenses, Police Officer Salzo went into the yard in order to perform the physical inspection. He did this by conducting a random sampling of the parts in the yard and comparing them with entries in the police book kept in the premises, which book he examined. A police book is a book in which junk yards are required, by law, to put the information as to where a vehicle came from and where the component parts were sold or otherwise disposed of.
Upon making this comparison, Police Officer Salzo found that certain parts he had taken for sampling did not appear in the police book. Out of about 2,000 parts in the yard, Police Officer Salzo listed about 10 or 15 parts in his random sampling. He noted vehicle identification numbers (VIN numbers) from certain parts which he had looked at. He then telephoned his office and advised them of these numbers in order to find out if there was an alarm on a *553 particular vehicle number. He received information that there was an active alarm on a certain vehicle identification number which he had called in. When he received this information, he was still comparing the random sampling to the police book which defendant had given him and found that certain parts were not listed in the police book. Police Officer Salzo informed defendant that there was an active alarm on certain Cadillac parts in the premises and that defendant was being arrested for criminal possession of stolen property. By an “alarm” is meant that the vehicle bearing a particular YIN number had been reported stolen to the police.
Police Officer Salzo and his colleagues moved various parts that were being seized, so that these parts could be picked up and vouchered. These parts were in fact seized and vouchered under vouchers marked People’s exhibit No. 1 in evidence.
About three weeks prior to April 27, 1983, these premises had been inspected by a person from the Department of Motor Vehicles who had given defendant certain procedural instructions. However, this inspection was unknown to Police Officer Salzo until he saw a note in the police book indicating that the Department of Motor Vehicles had previously made an inspection. About one week prior to April 27, 1983, Police Officer Milau had appeared in the premises in connection with the investigation of a particular car and not for the purpose of making an inspection and Police Officer Milau did not on that occasion make any inspection.
Defendant had a previous felony conviction and a previous misdemeanor conviction.
CONCLUSIONS OF LAW
In accordance with the authority granted by section 415-a of the Vehicle and Traffic Law, the police, in order to make a routine administrative inspection, entered the premises of A. L. Reliable Used Auto Parts, which was engaged in business as a vehicle dismantler. The police entered such premises without a warrant, thus presenting the question of the constitutionality of this routine administrative inspection.
*554 While such warrantless inspections are generally prohibited, they have been upheld in certain situations. Thus, warrantless administrative inspections have been upheld with respect to businesses dealing with liquor (United States v Biswell, 406 US 311) and with firearms (Colonnade Corp. v United States, 397 US 72).
While it is true that these cases do not involve vehicle dismantlers, the list of industries where warrantless administrative inspections are constitutionally permissible does not remain static. As recognized by defendant’s counsel in his memorandum of law “the rising number of auto thefts has presented law enforcement with an increasingly difficult problem over the past several years”. Under these circumstances, the Legislature may take appropriate reasonable steps to monitor the vehicle dismantling industry. It may be observed that while the regulation of vehicle dismantlers may be relatively new and was made in response to a particular problem concerning “the rising number of auto thefts”, the regulation and licensing of motor vehicles is something which has existed from the early years of the motor vehicle. (See, also, People v Tinneny, 99 Misc 2d 962; People v Camme, 112 Misc 2d 792.) It may also be noted that in dealing with motor vehicles the Legislature is dealing with something which is not fixed or stationary and generally kept at one location, but is dealing with a subject matter which is inherently mobile and is designed to, and does, in fact, regularly travel upon the public highways. While not directly in. point, the court observes the generally greater leeway given to the police in conducting vehicle searches, recognizing the problem posed by the mobility of motor vehicles. (See, e.g., Carroll v United States, 267 US 132; Harris v United States, 390 US 234; People v Orlando, 56 NY2d 441.)
When a person enters the business of vehicle dismantling, he enters a general area — motor vehicles — which has long been regulated. In conducting the specific business of dismantling motor vehicles, a person accepts the burdens, as well as the benefits of his trade. He, in effect, consents to the restrictions placed upon him. Inspections authorized by section 415-a of the Vehicle and Traffic Law pose only a limited threat to a vehicle dismantler’s justifi *555 able expectation of privacy. When he chooses to engage in a pervasively regulated business such as vehicle dismantling and receives an appropriate license, he knows that “during his regular and usual business hours” his records, vehicles, and vehicle parts will be subject to inspection.
The kind of problem presented in this case was recently considered by the Appellate Division, Second Department, in People v Pace (101 AD2d 336) where the court dealt specifically with section 436 of the New York City Charter. It summarized the applicable law in general as follows (p 338): “The constitutional prohibitions against unreasonable searches and seizures apply, of course, to administrative inspections of private commercial property (Marshall v Barlow's, Inc., 436 US 307; See v City of Seattle, 387 US 541; Sokolov v Village of Freeport, 52 NY2d 341). One engaged in an industry subject to a long-standing complex and pervasive pattern of ‘close supervision and inspection’ (Colonnade Corp. v United States, 397 US 72, 77), however, possesses a substantially diminished expectation of privacy and ‘this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections’ (Donovan v Dewey, 452 US 595, 599; see, e.g., United States v Biswell, 406 US 311; Colonnade Corp. v United States, supra; People v Rizzo, 40 NY2d 425).”
With respect to vehicle dismantlers, it declared (pp 339-340): “Although several nisi prius cases have sustained the constitutionality of the statutory scheme involved here (e.g., People v Camme, 112 Misc 2d 792; People v Tinneny, 99 Misc 2d 962), the issue has divided the courts of our sister States. Intermediate appellate courts in California (e.g., People v Easley, 90 Cal App 3d 440, cert den 444 US 899; People v Grey, 23 Cal App 3d 456, 462) and Florida (State v Moore, 424 So 2d 882 [Fla App]; Bludworth v Arcuri, 416 So 2d 882 [Fla App]) have found statutes somewhat more tightly drafted than the New York City Charter provision (see Lewis v McMasters, 663 F2d 954) to be constitutional. On the other hand, the New Mexico Court of Appeals has held its statute unconstitutional (State v Galio, 92 NM 266, writ of cert quashed 92 NM 260).”
The court in Pace found it unnecessary to resolve the question concerning the constitutionality of a statutory *556 scheme providing for the inspection of vehicle dismantlers since it observed in that case (p 340) that “the police officers expressly maintained that their mission was to gather evidence of a crime rather than to administer any regulatory scheme”. Also, as appears in footnote 1 in Pace (p 339) it was found that subdivision 5 of section 415-a of the Vehicle and Traffic Law had no application to the facts in that case.
Pace, therefore, is quite different from this case. Here, the police were making a routine administrative inspection. Basically, the Fourth Amendment prohibits “unreasonable” searches and seizures. The routine administrative inspection of the premises of A. L. Reliable Used Auto Parts, a vehicle dismantling business, does not run afoul of the constitutional prohibitions against unreasonable searches and seizures. The police did not use the administrative inspection as a mere guise to enter the premises of A. L. Reliable Used Auto Parts. These premises displayed a sign proclaiming to the public that it was the place of business of “A. L. Reliable Used Auto Parts”. Aside from a brick building on the premises, it contained yards on each side of the building enclosed with chain link fences through which one could see, from the outside, that the premises contained quantities of auto parts. The police entered the premises during regular business hours. They informed defendant, who said he was the general manager and was in charge, that they were police officers and were there to conduct an inspection. They showed their badges and the applicable regulations to the defendant. The fact that the police first made a random sampling of vehicle parts and then checked these parts against the police book, rather than checking the police book first does not, as defendant claims, make the inspection improper.
In any event, the court finds by clear and convincing evidence that defendant consented to the inspection. As stated in People v Gonzalez (39 NY2d 122, 128):
“Consent to search is voluntary when it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle (see People v Kuhn, 33 NY2d 203, 208, supra; Schneckloth v *557 Bustamante, 412 US 218, 225-228, supra). As the Supreme Court stated in Bumper v North Carolina (391 US 543, 550, supra), ‘where there is coercion there cannot be consent’.
“No one circumstance is determinative of the voluntariness of consent. Whether consent has been voluntarily given or is only a yielding to overbearing official pressure must be determined from the circumstances”.
Defendant said he had no objection to the inspection. He showed his various licenses and appeared to cooperate with the police in their inspection. The “totality of all the circumstances” (Schneckloth v Bustamonte, 412 US 218, 227) makes it appear that the defendant, a businessman who knew of the inspection statute and had previously received certain procedural instructions following an inspection by the Department of Motor Vehicles, decided to cooperate with the police and voluntarily consented to the inspection. The police did not break into the premises. They arrived during regular business hours when A. L. Reliable Used Auto Parts was open for business. Defendant was not threatened, arrested, handcuffed or restrained by the police when they entered the premises. The police simply announced that they were making an inspection. Defendant, who had been the general manager of the business for five or six years and had previously been convicted of a felony and of a misdemeanor was not a naive neophyte. As observed in People v Gonzalez (39 NY2d 122, 129, supra), “[a] consent to search by a case-hardened sophisticate in crime, calloused in dealing with police, is more likely to be the product of calculation than awe.” (See, also, People v Zimmerman, 101 AD2d 294.)
The court notes defendant’s claim that the property could not properly be seized without a search warrant. However, the police in this case were making a proper routine administrative inspection and were, as already indicated, even making the inspection with defendant’s consent. When, in the course of this inspection, Police Officer Salzo found that there was an active alarm on certain items of property, which meant that such property had been reported stolen, Police Officer Salzo had probable cause to arrest the defendant. That being the case, the police had the right, as they did, to seize the property *558 contemporaneously with the arrest without a search warrant. The property was in plain view and could properly be seized as an incident to that arrest. (People v Brosnan, 32 NY2d 254, 260.)
The Mapp motion made by defendant is denied.

 Defendant, while contending that both this statute and this section of the New York City Charter are unconstitutional, has, in his memorandum of law, focused his argument on the statute. Defendant’s counsel in his forwarding letter, states that all of the arguments raised in that memorandum of law “are every bit as applicable, and may be even more so, to the City Charter section, which is the more vaguely drafted of the two, and thus we would request that you consider the points as relevant to both enactments”. The court will also focus on the statute since if it is constitutional, it is unnecessary to consider the City Charter section; and if the statute is unconstitutional, it would appear that the City Charter section would also be unconstitutional.