OPINION OF THE COURT
Harold Enten, J.
The Fourth Amendment to the United States Constitution and section 12 of article I of the New York State Constitution prohibit intrusions into private dwellings without a warrant for purposes of executing a search or *783 arrest in the absence of exigent circumstances. (Coolidge v New Hampshire, 403 US 443; Payton v New York, 445 US 573.)
In this case, the court must determine whether the defendant forfeited these protections by using her residence for commercial purposes or allowing ASPCA agents to enter her residence to allegedly conduct an “illegal transaction.”
The defendant, Charlotte Smith, breeds wire-haired terriers in her house on Ampere Avenue, in The Bronx. On the night of August 30, 1983 at approximately 9:00 p.m., special agents from the ASPCA, accompanied by police officers, sought entry into her house to arrest her upon a complaint that she was giving medical treatment to dogs without a proper license.
Special Agents George and Kapps knocked on the front door of the defendant’s house. When she opened the door, Agent George asked her whether she would treat the dog George was carrying. Smith allowed the agents to enter the hallway of her house. Immediately upon their entry, she was placed under arrest. The agents went into her kitchen where they seized hypodermic needles from a kitchen cabinet and medications from the refrigerator. The defendant was led out of her house in handcuffs in the presence of television cameras and reporters. She was charged with the crimes of criminal impersonation (Penal Law, § 190.25) and possession of hypodermic needles (Penal Law, § 220.45).
Earlier that day, at approximately 3:00 p.m., Agent Kapps had gained access to Smith’s house during her absence, by convincing her housekeeper that he was investigating an animal cruelty complaint. At a Mapp hearing conducted by this court, Agent Kapps testified that while walking through the kitchen, on his way to the basement to inspect the condition of the dogs, he had seen the hypodermic needles and medications in the kitchen cabinet.
Defendant contends that the agents violated her Fourth Amendment rights by entering her home and conducting a search without a warrant. Therefore, all evidence seized *784 should be suppressed as the fruit of this illegal entry and search.
The People claim that all evidence obtained was “in plain view” and seized after a legal entry and incident to a lawful arrest. They maintain that the stringent warrant requirement of Payton v New York (supra), was not applicable in this case because (a) the defendant had converted her home into a commercial establishment by conducting a dog-breeding business and (b) she converted her home into a commercial center to which the agents were invited for purposes of transacting the unlawful business of treating a dog without a proper license. They cite Lewis v United States (385 US 206) to support the theory that this business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car or on the street. Therefore, a government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purpose contemplated by the occupant.
WARRANT REQUIREMENT FOR A SEARCH
Although a search conducted without a warrant is per se unreasonable, it is subject to a few specifically established and well-delineated exceptions. (Katz v United States, 389 US 347; Coolidge v New Hampshire, 403 US 443, supra.)
The People seek to justify the warrantless search of the defendant’s home and subsequent seizure of incriminating evidence on two of these established exceptions: (1) they claim that the seizure of the physical evidence from the defendant’s kitchen was “incident to a valid arrest” and (2) the evidence was legally seized as being “in plain view.”
In order for either of these two exceptions to apply in any search and seizure situation, the threshold issue to be determined is whether the initial intrusion into the area searched was constitutional. (Coolidge v New Hampshire, supra.)
If the People intend to justify the search and seizure conducted by the agents as being incident to a legal arrest, they bear the heavy burden of justifying the arrest of the defendant in her home without a warrant. (Whiteley v Warden, 401 US 560.)
*785 To apply the “plain view” theory, they must prove that the initial intrusion that brought the agents within plain view of the articles seized was supported by a valid warrant or by one of the recognized exceptions to the warrant requirement. (Warden v Hayden, 387 US 294; Coolidge v New Hampshire, supra.)
WARRANT REQUIREMENT FOR ENTERING A HOME
A suspect’s Fourth Amendment right to be secure in his person and his house against unreasonable searches and seizures was buttressed by the ruling in Payton (445 US 573, supra) which maintained that a warrantless entry into a suspect’s house for the purposes of making an arrest was unconstitutional unless the police meet the heavy burden of demonstrating an urgent need to justify such an entry. The possibility that the suspect is armed (Warden v Hayden, supra) or has or is about to commit a felonious crime of violence (McDonald v United States, 335 US 451) or is threatening to flee or destroy evidence sought by the officers (People v Lewis, 94 AD2d 44) provides reasonable justification for a warrantless entry.
Absent these exigent circumstances, however, law enforcement officials are compelled to secure a warrant prior to entry. The People are no doubt aware of the absence of exigent circumstances in this case. The crime alleged to have been committed was a misdemeanor; the defendant posed no threat of fleeing or destroying evidence sought by the agents and there was ample time to secure a warrant before entering her house. Therefore, rather than justifying their entry on this established exception, they attempt to circumvent the warrant requirement by claiming that this case falls outside the purview of Payton (supra). This court does not agree for the following reasons.
The Payton court sought to uphold the primary aim of the Fourth Amendment which is to protect the home from unreasonable governmental intrusions. (Payton v New York, supra.) Rather than summarily determining that certain premises are not covered by Payton and are denied this protection because a commercial activity is being conducted therein, the court must determine whether the defendant had a legitimate expectation of privacy in these *786 premises. (See Carr, Payton v New York, Arrest Warrant Required for Arrest in Suspect’s House, 7 Search and Seizure Law Report [No. 6], pp 31, 33; see, also, Rakas v Illinois, 439 US 128.)
One who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy. (Rakas v Illinois, supra.) However, in circumstances where a person knowingly exposes his home or office to the public, he is voluntarily relinquishing his expectation of privacy. (Katz v United States, supra.)
A sign posted at the entrance to the premises, in conjunction with an unlocked door, indicates a manifest invitation to the public to enter (People v Perez, 78 AD2d 703) and a voluntary relinquishment of an expectation of privacy on the part of the occupant.
Absent any of these elements, however, a person who makes certain premises her primary place of residence, posts no signs and shuts her door to the public should not be deemed to have relinquished her expectations of privacy by conducting a private commercial enterprise within.* The fact that the defendant conducted a dog-breeding business did not deprive her of her constitutional right to conduct this business free from unreasonable governmental intrusion. (See v City of Seattle, 387 US 541; G. M. Leasing Corp. v United States, 429 US 338, 352.)
Therefore, even though the defendant used certain areas of her house for private business purposes, she was still entitled to Fourth Amendment protections and the premises were covered by the Payton ruling.
The People further claim that the type of business conducted by the defendant is one that is traditionally subject to close governmental regulation and this factor should severely limit her expectation of privacy. This theory is unsubstantiated by law.
It is true that a warrantless entry into a private commercial establishment is not violative of the Fourth Amendment when the entry is for purposes of inspecting closely regulated businesses such as the firearm industry (Marshall v Barlow’s Inc., 436 US 307), the mining industry *787 (Donovan v Dewey, 452 US 594), or the liquor industry (Colonnade Corp. v United States, 397 US 72). However, even in these circumstances, there has to be both a necessity to further a regulatory scheme, and Federal or State regulatory presence must be sufficiently comprehensive and defined so that the owner is aware that his property will be subject to periodic inspections undertaken for specific purposes. (Donovan v Dewey, supra; United States v Briswell, 406 US 311, 316; People v Garcia, 111 Misc 2d 550.)
Absent any statutory guidelines to regulate these warrantless entries, the Fourth Amendment and its various restrictive rules apply. (Colonnade Corp. v United States, supra.)
In this instance, the agents were not acting pursuant to any well-defined regulatory scheme and the specific purpose for their entry was to arrest the defendant and not to inspect the conditions of the business. That purpose was accomplished six hours earlier.
The second prong of the People’s argument might be termed an “illegal transaction of business” theory. Under this theory, a defendant is deemed to have relinquished his expectation of privacy by inviting agents into his home to transact unlawful business. They cite Lewis v United States (385 US 206, supra) and United States v Collins (652 F2d 735); United States v Ruiz-Altschiller (694 F2d 1104) and United States v Davis (646 F2d 1298), all 8th Circuit Court of Appeals rulings as their authority.
The facts in these cases are clearly distinguishable from the case at bar. In the cited cases, law enforcement agents acting under cover were invited into the defendants’ homes for the specific purpose of executing a felonious sale of narcotics. There was no ambiguity as to the motive of both parties, since the transaction was prearranged and in most cases constituted the second consummated transaction between the same parties.
At the core of these cases is the judicially recognized necessity for using undercover agents to ferret out those organized criminal activities that are characterized by covert dealings with victims who cannot or do not protest. *788 This is particularly so in the enforcement of vice, liquor or narcotics laws, as it is all but impossible to obtain evidence for prosecution save by the use of decoys. (Model Penal Code [Tent Draft No. 9, 1959], § 2.10, Comment, p 16, as cited in Lewis v United States, supra, p 210, n 6.)
Absent these elements, however, there is no demonstrable necessity for following this procedure. When, as in this case, there is a complaining witness and unimpeded access to a defendant, utilization of this method to seize the defendant and her possessions is merely a shortcut to reach objectives that should be achieved only by adhering to established constitutional guidelines.
Furthermore, the court in United States v Davis (supra), highlighted a crucial element in these cases which removes them from a classic search and seizure situation. The court ruled that a purchase of drugs by a law enforcement officer acting as an undercover agent is not a search or seizure under the Fourth Amendment. The drugs obtained from these defendants’ homes came into possession of the agents through a valid purchase. Such a purchase does not violate the Fourth Amendment as a matter of law. (See, also, Lewis v United States, supra.) The evidence in this case, on the contrary, was seized from a cabinet in an area separate from the room where the alleged illegal transaction took place. Lewis stressed that even where illegal business is being transacted, the agent cannot conduct a general search for incriminating materials.
Therefore, considering the nature of the alleged crime involved, and the length of time available to the agents to secure a warrant, the court cannot sanction this covert entry into the defendant’s house. Even if the court were to sanction the entry and arrest, it is apparent that the criteria for a valid search incident to arrest, or plain view seizure, are wholly lacking.
A warrantless search incident to a lawful arrest may generally extend to the area that is considered to be in the “possession” or under the “control” of the person arrested. (Chimel v California, 395 US 752; New York v Belton, 453 US 454.)
Recovering evidence from a cabinet in a separate room approximately 40 feet away from the handcuffed defendant *789 extends far beyond the permissible scope of a “search incident to arrest”, making this doctrine entirely inapplicable to this case. In the same vein, we hold that the location of the hypodermic needles and medications seized in this case will preclude an application of the “plain view” exception since it is doubtful that they were immediately apparent to the agents. (United States v Bonfiglio, 713 F2d 932, citing, inter alia, Coolidge v New Hampshire, 403 US 443, 466, supra.)
Furthermore, where the discovery of the evidence seized is anticipated, where the agents know in advance the location of the evidence and intend to seize it, the criterion that the discovery of the evidence be inadvertent is not met. (Coolidge v New Hampshire, supra.)
The People cite the case of Ker v California (374 US 23) in support of the proposition that in cases involving a seizure of contraband, the inadvertence requirement does not apply. However, Ker is distinguishable from the present one on these important grounds. In Ker, (1) the presence of exigent circumstances justified the warrantless entry; (2) the discovery of the marihuana was fortuitous; and (3) the marihuana was seized in the immediate proximity of the defendants, incident to their lawful arrest, so that the seizure was unquestionably lawful under the “search incident” theory as well. None of these elements are present in our case.
In this case, no legitimate exception to the warrant requirement justifies the seizure of evidence by the ASPCA agents. Foreknowledge of the location of the evidence sought by the agents and the absence of exigent circumstances forecloses any rationalization for their failure to secure authorization for their entry and search from an impartial magistrate. “Omission of such authorization ‘bypasses the safeguards provided by an objective determination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the * * * search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment.’ ” (Beck v Ohio, 379 US 89, 96, as cited in Katz v United States, 389 US 347, 358.)
*790 Based upon these conclusions, the court hereby rules that all physical evidence seized as a result of this illegal search is inadmissible.

 The defendant’s business catered to a restricted clientele who maintained a close relationship with the defendant. This fact was attested to by several clients.