UNITED STATES of America, Plaintiff,

v.

Joseph RUSSO, D.O., Defendant.

Crim. A. No. 81–80081.

United States District Court,
E. D. Michigan, S. D.

April 29, 1981.

Ross Parker, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Myron F. Poe, Poe & Stanesa, Royal Oak, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

PATRICIA J. BOYLE, District Judge.

The sole issue before the Court is whether a seizure of evidence, pursuant to an administrative search warrant issued without full probable cause, should be suppressed because the seizure was, in fact, a seizure for purposes of criminal prosecution. Movant raised this issue at oral argument, and the Court subsequently conducted an evidentiary hearing, from which I make the factual conclusions necessary for resolution of this issue.

On July 6, 1978, Special Agent Ralph Burch of the Drug Enforcement Administration (DEA) secured an inspection warrant for Dr. Russo's office, pursuant to the provisions of Section 510 of the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 880.

The statute authorizes inspection of any records, reports and other documents required to be kept under the subchapter. It allows inspection of equipment and finished and unfinished drugs and "all other things" appropriate for verification of the required records and permits inventory of any stock of any controlled substance. 21 U.S.C. § 880(b)(3)(A), (B), (C).

The warrant was executed the same date, and among the items seized were numerous controlled substances and other drugs, documents, and three patient file folders containing patient records for Daniel Gilchrist, Marcus De Lean, and Willie Maxwell. De Lean and Maxwell were the undercover names of two law enforcement officers who allegedly had previously obtained methamphetamine from Dr. Russo (on June 23, June 30, July 5, and July 6). Daniel Gilchrist is an individual who was arrested after leaving Defendant's office either several days before the date the warrant was

issued or on the same day. When arrested Gilchrist was in possession of a large quantity of methamphetamine. He was charged with possession of a controlled substance with intent to distribute.

At the evidentiary hearing, Agent Ralph Burch testified that he is the liaison officer to the Diversion Investigation Unit and that he works through the unit with federal and state officials functioning to enforce compliance with both the administrative and criminal laws of the affected state licensing board and the state and federal criminal law. Mr. Burch testified that the persons who act with him as federal agents are compliance investigators who work only on regulatory aspects of registration and who have no police powers. The state agency representatives likewise are both police officers and persons without police powers. Members of the drug investigation unit have dual responsibilities for regulation and enforcement.

Burch identified the purpose for the warrant as an accountability audit. He conceded that, while seizure of the patient records in question was not really relevant to the administrative audit authorized by the statute, it was "an example of the way in which Dr. Russo explained the dispensation of controlled substances."

Mr. Burch also testified that it is standard procedure to employ undercover agents, all of whom have police power, to make contacts with doctors or other registrants in the course of an administrative investigation and subsequently to seize the patient record files representing undercover contacts with the doctors or other registrants. Mr. Burch's testimony also established that in the instant case the law enforcement officials were advised prior to June 29, 1978, that Dr. Russo had purchased and received a substantial quantity of controlled substances and that from June 29 forward to the date of obtaining the warrant, July 6, 1978, continuous surveillance of Dr. Russo's office was conducted. In addition, Agent Burch candidly admitted that such surveillance was unusual in the context of administrative proceedings and

that nine or ten of every twelve cases on which he works ultimately involve criminal investigations.

Finally, Agent Burch testified that, on the same day the administrative warrant issued, a search warrant for Dr. Russo's home was issued on the basis of statements made by the Defendant that records relating to the dispensation of controlled substances were kept there. This warrant was a traditional search warrant since Section 510 of the Act does not authorize the use of an administrative warrant to enter a private home.

Agent Burch also testified that as of the time the warrant was obtained no determination had been made relative to criminal prosecution and that an audit was, in fact, conducted by compliance officers and action was taken by the Michigan Board of Osteopathy and the DEA registration section. It is clear, however, from his testimony that his function related to both criminal and civil investigations and that the primary purpose for securing the administrative warrant in the instant case was to allow seizure of evidence relevant to a possible criminal prosecution.

Supreme Court authority dealing with regulatory inspections reveals that the Court has never departed from the requirement that a search for the fruits and instrumentalities of crime requires a traditional search warrant or the presence of exigent circumstances.

In *Frank v. Maryland*, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), the Court held that the fourteenth amendment does not require a warrant for inspection of homes for health code violations. Justice Frankfurter, speaking for the Court, rested this conclusion on an analysis of the constitutional protection against official invasion of privacy, finding that it encompasses two protections: the right to be secure from intrusion and the right to self-protection. The second, and intimately related protection is self protection: the right to resist unauthorized entry which has as its design the securing of information to fortify the coercive power of the state

against the individual, information which may be used to effect a further deprivation of life or liberty or property .... [I]t was on the issue of the right to be secure from searches for evidence to be used in criminal prosecutions or for forfeiture that the great battle for fundamental liberty was fought.

*Id.* 365, 79 S.Ct. at 808.

The Court concluded that the fourth amendment did not entitle appellant to refuse inspection, since "[n]o evidence for criminal prosecution was sought to be seized" and the constitutional right to privacy did not assure the absolute right to refuse consent.

Eight years later in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Court overruled *Frank v. Maryland*, specifically finding that the fourth amendment prohibition against unreasonable searches and seizures precluded warrantless inspections.

Balancing the individual's right to privacy against the need for public health and safety and explicitly noting the limited nature of the intrusion and that the action was not aimed at the discovery of evidence of crime, *id.* 537, 87 S.Ct. at 1735, the Court held that justification for an administrative search warrant would be determined by a less rigorous standard for probable cause.

"[P]robable cause" to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (*e. g.*, a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* 538, 87 S.Ct. at 1736.

In so doing, however, the Court, responding to appellant's claim that a variation from traditional probable cause requirements would authorize "synthetic search warrants," stated,

[W]e do not agree. The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the standard.... Such an approach neither endangers time-honored doctrines applicable to criminal investigations nor makes a nullity of the probable cause requirement in this area.

*Id.* 539, 87 S.Ct. at 1736.

In *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Court, in dicta, most recently made reference to the relationship between administrative probable cause and traditional probable cause. Defendants had been convicted of arson based in part on evidence that had been obtained through several warrantless entries into burned premises. The Court reaffirmed both the applicability of the fourth amendment to administrative searches and the fact that the reasonableness of a particular search is to be determined by balancing the need for the intrusion against the threat of disruption of the occupant. "The showing of probable cause necessary to secure a warrant may vary with the object and intrusiveness of the search, but the necessity for the warrant persists." *Id.* 506, 98 S.Ct. at 1948 (footnote omitted).

The Court sustained the warrantless entry and seizure on the morning after the fire, finding that this was a reasonable continuation of the initial entry which was an exigency authorized by the fourth amendment. However, as to subsequent entries during which an officer had returned to the fire site for the sole purpose of making an investigation and seizing evidence, the Court quoted with approval the language of the Michigan Supreme Court,

"Where the cause [of the fire] is undetermined, and the purpose of the investigation is to determine the cause and to prevent such fires from occurring or recurring, a ... search may be conducted pursuant to a warrant issued in accordance with reasonable legislative or administrative standards or, absent their

promulgation, judicially prescribed standards; if evidence of wrongdoing is discovered, it may, of course, be used to establish probable cause for the issuance of a criminal investigative search warrant or in prosecution." But "[i]f the authorities are seeking evidence to be used in a criminal prosecution, the usual standard [of probable cause] will apply." 399 Mich. [564] at 584, 250 N.W.2d [467] at 477.

*Id.* 508, 98 S.Ct. at 1949.

The Court in *Tyler* concluded,

additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. Evidence of arson discovered in the course of such investigation is admissible at trial, but if the investigatory officers find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime.

*Id.* 511–12, 98 S.Ct. at 1951 (citations omitted).

In the instant case, the record establishes that the officers had probable cause to believe a criminal violation had occurred, that by Agent Burch's own admission the seizure of individual patient records was not apparently relevant to an accounting procedure, and that, in fact, the officers desired access to gather evidence for a possible prosecution. The officers were, therefore, obligated to obtain a warrant upon a traditional showing of probable cause applicable to searches for evidence of crime.

In so ruling, I am mindful of the Supreme Court's citation to *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), in the *Michigan v. Tyler* case, 436 U.S. at 512, 98 S.Ct. at 1951. While not explained by the Court, the citation to *Ventresca* can fairly be construed as a reference to the judicial preference for a search warrant and the court's duty to read an affidavit in a commonsense way to sustain a doubtful and marginal case. If the

petition here alleged a basis for probable cause, the Court would sustain the seizure. The problem in this case is that the only basis alleged in the petition for such a finding is the statement that "a total of over 840,000 dosage units have been documented as being purchased by Dr. Russo from the first of January, 1978, until the present." This statement does not supply probable cause to believe that evidence of criminal activity is located on the premises. I conclude therefore that the administrative warrant in the instant case was not a reasonable intrusion into the recognized fourth amendment area of protected interest given the showing made. Accordingly, the Defendant's Motion to Suppress must be and is hereby GRANTED.

IT IS SO ORDERED.