THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
SYLVESTER PACE and GAETANO PACE, Appellants.

Second Department, April 30, 1984

### APPEARANCES OF COUNSEL

*Bernard Kenny* (*Richard T. Farrell* and *Barbara L. Hartung* of counsel), for appellants.

*Elizabeth Holtzman, District Attorney* (*Michael J. Halberstam, Barbara D. Underwood* and *Roseann B. MacKechnie* of counsel), for respondent.

### OPINION OF THE COURT

TITONE, J.

Defendants, Sylvester Pace and Gaetano Pace, appeal from two judgments of the Supreme Court, Kings County, convicting them, upon their pleas of guilty, of criminal possession of stolen property. As permitted by statute (CPL

710.70, subd 2), they bring up for review the denial of their motion to suppress physical evidence.

The core issue concerns the construction of section 436 of the New York City Charter which authorizes the police department to conduct warrantless administrative inspections of certain enterprises. Because we find that the search undertaken here was not for administrative purposes, we hold that the statute can have no application and reverse. It is not necessary to pass upon the defendants' constitutional challenges to the statute.

On February 12, 1979, two police officers were engaged in investigating the registration of an automobile that they had stopped at an intersection when they observed an open truck driven by defendant Sylvester Pace (hereinafter Sylvester) which was transporting a large portion of a car body. Since the truck had a transporter plate, the officers knew that it was not permissible to use the truck for commercial purposes.

One of the officers approached the truck and asked Sylvester where he had gotten the wreck. Sylvester replied that he had found it on Flatlands Avenue and that he had no papers for it or, for that matter, any registration for the truck. Upon noticing that the VIN plate had been removed from the wrecked car, the officers placed Sylvester under arrest.

At this point, the officers observed another flatbed truck drive by and stop at a traffic light. This truck, which was carrying two front ends of late model cars, was detained and the officers examined the driver's papers, ascertaining that the parts had come from Economy Auto Salvage. The driver was directed to take the officers to that location and he complied. Economy Auto Salvage was owned by the two defendants, the previously arrested Sylvester and defendant Gaetano Pace.

When the officers arrived, they were told by a woman at the desk that the owner was out and would return shortly. They then asked to see the "police book" which those who deal in car parts and the dismantling of cars are required to keep (see Vehicle and Traffic Law, § 415-a, subd 5, par [a]) and were advised that the police book and all papers had been stolen during a weekend burglary.

Thereupon the officers undertook to survey the yard, not for the purposes of an administrative inspection but expressly to gather evidence of a crime. They wrote down the VIN numbers from several engines, called them into the Auto Crime Unit, and received a response indicating that two of the engines were obtained from stolen vehicles. The premises were secured and a search warrant was obtained. Those engines and other items were later seized pursuant to the warrant.

Prior to trial, defendants sought to suppress all physical evidence. Criminal Term found that the initial stop of Sylvester's truck was proper, that the warrantless search of Economy Auto Salvage was sustainable as an administrative search under section 436 of the New York City Charter and that the search conducted pursuant to the warrant should be upheld. On reargument, Criminal Term rejected defendants' challenge to the constitutionality of section 436 of the New York City Charter (*People v Pace,* 111 Misc 2d 488).

We agree with Criminal Term that the initial stop and seizure of the truck was lawful and was justified by the belief that Sylvester was operating a vehicle in violation of the Vehicle and Traffic Law (*People v Singleton,* 41 NY2d 402; *People v Behlin,* 83 AD2d 557; *People v Young,* 81 AD2d 843; cf. *People v Sobotker,* 43 NY2d 559). Nonetheless, the search of the yard cannot be justified on the basis of section 436 of the New York City Charter. Consequently, the fruits of that search as well as the subsequent search conducted pursuant to the warrant should have been suppressed.

The constitutional prohibitions against unreasonable searches and seizures apply, of course, to administrative inspections of private commercial property (*Marshall v Barlow's, Inc.,* 436 US 307; *See v City of Seattle,* 387 US 541; *Sokolov v Village of Freeport,* 52 NY2d 341). One engaged in an industry subject to a long-standing complex and pervasive pattern of "close supervision and inspection" (*Colonnade Corp. v United States,* 397 US 72, 77), however, possesses a substantially diminished expectation of privacy and "this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes

authorizing warrantless inspections" (*Donovan v Dewey,* 452 US 594, 599; see, e.g., *United States v Biswell,* 406 US 311; *Colonnade Corp. v United States, supra; People v Rizzo,* 40 NY2d 425).

Our sole concern[1] is with section 436 of the New York City Charter, which provides as follows: "The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession. A refusal or neglect to comply in any respect with the provisions of this section on the part of any pawnbroker, vendor, junkshop keeper, junk boatman, cartman, dealer in second-hand merchandise or auctioneer, or any clerk or employee of any thereof shall be triable by a judge of the criminal court and punishable by not more than thirty days' imprisonment, or by a fine of not more than fifty dollars, or both".

Defendants claim, among other things, that their industry is not the subject of such pervasive regulation and that the statutory scheme is overbroad. Although several nisi prius cases have sustained the constitutionality of the statutory scheme involved here (e.g., *People v Camme,* 112 Misc 2d 792; *People v Tinneny,* 99 Misc 2d 962),[2] the issue has divided the courts of our sister States. Intermediate appellate courts in California (e.g., *People v Easley,* 90 Cal App 3d 440, cert den 444 US 899; *People v Grey,* 23 Cal App 3d 456, 462) and Florida (*State v Moore,* 424 So 2d 882 [Fla App]; *Bludworth v Arcuri,* 416 So 2d 882 [Fla App]) have found statutes somewhat more tightly drafted than the

1. Subdivision 5 of section 415-a of the Vehicle and Traffic Law, the statute under which the police officers said they were acting, has no application. While this section requires dismantlers to keep a police book, the book was missing when the officers entered and it would thus have been impossible for the officers to exercise the alleged implied authority to compare the book entries to the contents of the yard.

2. While our analysis makes it unnecessary to pass on the question, we would note that since the "legality of the search depends * * * on the authority of a valid statute" (*United States v Biswell,* 406 US 311, 315) the defendants would have standing to challenge the constitutionality of section 436 of the New York City Charter (see *Berger v New York,* 388 US 41, 55).

New York City Charter provision (see *Lewis v McMasters,* 663 F2d 954) to be constitutional. On the other hand, the New Mexico Court of Appeals has held its statute unconstitutional (*State v Galio,* 92 NM 266, writ of cert quashed 92 NM 260).

We need not resolve the question here for the police officers expressly maintained that their mission was to gather evidence of a crime rather than to administer any regulatory scheme. When a search is not undertaken as a routine regulatory inspection, the administrative search rationale is simply inapplicable (see *United States v Russo,* 517 F Supp 83; *United States v Lawson,* 502 F Supp 158, 165; *United States v Anile,* 352 F Supp 14, 17; *Commonwealth v Lipomi,* 385 Mass 370, __, 432 NE2d 86, 91; *State v Sidebotham,* __ NH __, 35 Crim L Rptr 2077; Hall, Search and Seizure, § 11:8, 1983 Cum Supp, pp 204-205). As so well put in *United States v Lawson* (*supra,* p 165), "once the purpose behind the search shifts from administrative compliance to a quest for evidence to be used in a criminal prosecution, the government may constitutionally enter the premises only upon securing a warrant supported by full probable cause" (citing *Michigan v Tyler,* 436 US 499, 508, 512; see, also, *Michigan v Clifford,* 464 US __, 104 S Ct 641; *State v Sidebotham,* __ NH __, 35 Crim L Rptr 2077, *supra* [search of automobile repair shop]; *People v Hedges,* 112 Misc 2d 632, 639; *People v Tursi,* Supreme Ct, Queens County, June 9, 1983, Farlo, J. [search of junkyard pursuant to city charter]; *People v Camme,* NYLJ, Nov. 2, 1981, p 16, col 2 [Richard A. Brown, J.] [also search of junkyard pursuant to city charter]).

Application of such a bright line rule is particularly appropriate when the police have been designated administrators. After all, "[s]earches by the police are inherently more intrusive than purely administrative inspections. Moreover, unlike administrative agents, the police have general criminal investigative duties which exceed the legitimate scope and purposes of purely administrative inspections" (*Commonwealth v Lipomi,* 385 Mass 370, __, 432 NE2d 86, 91, *supra;* see, also, *Commonwealth v Frodyma,* 386 Mass 434, 436 NE2d 925; *State v Williams,* 84 NJ 217, 227).

Perhaps, in some circumstances, an administrative warrant, issued on a less than probable cause standard, would suffice (see *State v Galio,* 92 NM 266, *supra; Commonwealth v Accaputo,* 380 Mass 435). The present legislation, however, makes no such accommodation.[3]

In any event, here the officers were properly in a public area of the yard and once they were told that the police book had been stolen, nothing prevented them from guarding the area while a search warrant was obtained (see *People v Arnau,* 58 NY2d 27). "The mere fact that it would be burdensome to obtain a warrant, standing alone, is never justification for not obtaining a search warrant" (*People v Spinelli,* 35 NY2d 77, 82).

Thus, we are "confronted with a situation where the police have illegally entered a [premises], discovered contraband, and then sought a search warrant in an attempt to validate the seizure of the fruits of the illegal entry" (*People v Arnau, supra,* p 31; see *United States v Griffin,* 502 F2d 959, cert den 419 US 1050; *People v Williams,* 37 NY2d 206). Consequently, evidence obtained pursuant to the warrant must also be suppressed (*People v Soto,* 96 AD2d 741, 742, application for lv to app den 60 NY2d 825).

For the reasons stated, the judgment appealed from should be reversed, on the law and the facts, the motion to suppress granted to the extent of suppressing all physical evidence obtained as a result of the entry into Economy Auto Salvage on February 12, 1979 and the subsequent search conducted pursuant to a search warrant issued on February 13, 1979, and the matter remitted to the Supreme Court, Kings County, for further proceedings.

MANGANO, J. (dissenting). The majority is of the view, that (1) the warrantless search by the police of defendants' junkyard cannot be justified as an administrative search pursuant to section 436 of the New York City Charter because the police officers admitted that their mission was to gather evidence of a crime rather than to administer any regulatory scheme and (2) the fruits of that search as well

---

**3.** An administrative warrant requirement provides "assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria" (*Marshall v Barlow's, Inc.,* 436 US 307, 323).

as the subsequent search conducted pursuant to a warrant must be suppressed.

I respectfully disagree.

Section 436 of the New York City Charter authorizes warrantless administrative searches of junkshop yards by providing as follows: "The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession. A refusal or neglect to comply in any respect with the provisions of this section on the part of any pawnbroker, vendor, junkshop keeper, junk boatman, cartman, dealer in second-hand merchandise or auctioneer, or any clerk or employee of any thereof shall be triable by a judge of the criminal court and punishable by not more than thirty days' imprisonment, or by a fine of not more than fifty dollars, or both".

It is beyond cavil that the Fourth Amendment prohibition against unreasonable searches and seizures applies to warrantless administrative searches of private commercial property (see *Marshall v Barlow's, Inc.,* 436 US 307). However, an exception to this rule has been created, as the majority acknowledges, for "pervasively regulated business[es]" and for closely regulated industries "long subject to close supervision and inspection" (*Colonnade Corp. v United States,* 397 US 72, 77 [liquor industry]; *United States v Biswell,* 406 US 311, 316 [firearms industry]). The Supreme Court of the United States has stated that these industries have "such a history of government oversight that no reasonable expectation of privacy * * * could exist for a proprietor over the stocks of such an enterprise * * * when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation" (*Marshall v Barlow's, Inc., supra,* p 313).

The junkyard and vehicle dismantling industries have also long been subject to government supervision and

inspection due to legislative findings that the crimes of possession of stolen property in general and stolen automobile parts, in particular, are pervasive in those industries (see *People v Tinneny,* 99 Misc 2d 962, 966-967; *People v Camme,* 112 Misc 2d 792, 795; *Bludworth v Arcuri,* 416 So 2d 882, 884-885 [Fla App]).

Accordingly, I agree with the decisions rendered by several nisi prius courts in this State as well as appellate decisions of our sister States which have held that the junkyard and vehicle dismantling industries fall within the *Colonnade-Biswell* exception and that warrantless administrative searches of these industries are valid (*People v Ruggieri,* 85 Misc 2d 141; *People v Tinneny, supra; People v Garcia,* 111 Misc 2d 550; *People v Camme, supra; People v Lopez,* 116 Cal App 3d 600; *People v Woolsey,* 90 Cal App 3d 994; *People v Easley,* 90 Cal App 3d 440, cert den 444 US 899; *People v Grey,* 23 Cal App 3d 456; *State v Moore,* 424 So 2d 882 [Fla App]; *Bludworth v Arcuri, supra; State v Barnett,* 389 So 2d 352 [La]; but cf. *State v Galio,* 92 NM 266, writ of cert quashed 92 NM 260 [auto diagnostic and repair clinic held not to be within the *Colonnade-Biswell* exception]).

The majority is of the view that the warrantless search by the police of defendants' junkyard, i.e., inspecting VIN numbers on several engines, which would otherwise be valid if motivated by an intent to conduct an administrative search under section 436 of the New York City Charter (*Colonnade Corp. v United States, supra; United States v Biswell, supra*), was unconstitutionally infirm in view of the fact that the police admitted that their mission in going to the junkyard was to gather evidence of a crime rather than to administer any regulatory scheme.

Although not expressly stated in the majority opinion, it clearly appears that the majority is of the view that the police possessed probable cause to search the junkyard and relied on the pretext of an administrative search to excuse their failure to obtain a search warrant.

There is authority for the proposition that a warrantless search of a pervasively regulated industry under *Colonnade* (*supra*) and *Biswell* (*supra*) will not be sustained where probable cause existed that evidence of crimes or

violations related to the regulatory scheme existed at the particular business site (see *United States v Anile,* 352 F Supp 14, 17; *United States v Russo,* 517 F Supp 83; *Commonwealth v Lipomi,* 385 Mass 370, __ 432 NE2d 86, 91; *People v Hedges,* 112 Misc 2d 632, 639). However, this proposition is not entirely free from doubt in view of existing authority to the contrary (see *State v Mach,* 23 Wn App 113).

Nevertheless, we need not resolve this particular issue since the record in the case at bar demonstrates that the police did not possess probable cause that any crimes related to the particular regulatory scheme were being committed at the junkyard. In this regard, it must be stressed that while the police had probable cause to arrest Sylvester Pace, after they validly stopped the truck that he was driving and noticed that a VIN plate had been removed from the wrecked car located thereon, they had no knowledge at that time[1] that he had any connection with Economy Auto Salvage. The officers' interest in Economy was aroused only when the driver of the second truck, who had done nothing illegal, voluntarily stopped, and upon inquiry, told them that the two front ends of late model cars which he was carrying came from Economy. The facts at bar therefore present an occasion where "it can be successfully argued that suspicion does not convert an administrative investigation into a traditional criminal investigation" (*United States v Anile, supra,* p 18).

I do not consider the decision in *State v Williams* (84 NJ 217), cited by the majority, as apposite to the facts at bar.

In *State v Williams* (*supra*), two detectives, acting on a tip, entered a tavern to conduct a warrantless search for a stolen citizens' band radio. The officers searched the public area of the tavern as well as the basement, where lottery tally sheets, two revolvers, and the radio were found. Defendant's motion to suppress was denied by the Trial Judge on the ground that a warrantless search of the tavern was authorized by a New Jersey statute which regulated the sale of alcoholic beverages and which pro-

---

1. The police first learned that the Paces owned the junkyard when they completed the search thereof.

vided in pertinent part (*State v Williams, supra,* p 222, quoting from NJ Stats Ann, § 33:1-35):

"The Director of the Division of Alcoholic Beverage Control and each other issuing authority may make, or cause to be made, such investigations as he or it shall deem proper in the administration of this chapter and of any and all other laws now or which may hereafter be in force and effect concerning alcoholic beverages, or the manufacture, distribution or sale thereof, or the collection of taxes thereon, including the inspection and search of premises for which the license is sought or has been issued, of any building containing the same, of licensed buildings, examination of the books, records, accounts, documents and papers of the licensees or on the licensed premises.

"Every applicant for a license, and every licensee, and every director, officer, agent and employee of every licensee, shall, on demand, exhibit to the director or other issuing authority, as the case may be, or to his or its deputies or investigators, or inspectors or agents all of the matters and things which the director of the division or other issuing authority, as the case may be, is hereby authorized or empowered to investigate, inspect or examine, and to facilitate, as far as may be in their power so to do, in any such investigation, examination or inspection, and they shall not in any way hinder or delay or cause the hindrance or delay of same, in any manner whatsoever. Investigations, inspections and searches of licensed premises may be made without search warrant by the director, his deputies, inspectors or investigators, by each other issuing authority and by any officer".

The Supreme Court of New Jersey reversed the defendant's conviction and granted the motion to suppress, holding that the officers were not conducting a true regulatory search, but were using the statute as a pretense to search the tavern for evidence of a crime unrelated to the particular regulated industry. Specifically, the Supreme Court of New Jersey stated (*State v Williams, supra,* pp 224, 227):

"Recognition that the government may authorize warrantless searches of certain businesses does not end the inquiry. *Colonnade* and *Biswell* established that certain

businesses * * * are subject to governmental oversight to such an extent that anyone engaging in those businesses would have a reduced expectation of privacy. Nonetheless, persons engaged in those businesses remain entitled to protection of their limited expectation of privacy. Both cases involved inspections by government agents seeking evidence of substantive violations of relevant regulatory statutes * * *

"To conclude, the Fourth Amendment to the United States Constitution generally prohibits a search undertaken without a valid warrant. An exception permits warrantless searches for offenses peculiar to the liquor business, when authorized by statute".

In contrast to *State v Williams (supra)*, the police in the case at bar entered defendants' junkyard and checked VIN numbers for the purpose of ascertaining whether or not the crime of possession of stolen property, i.e., stolen automobile parts, was being committed at the junkyard. This is the very crime which the Legislature has found to be pervasive in the junkyard and vehicle dismantling industries and which caused government to embark on a longstanding policy of supervision and regulation of these industries. Under the circumstances, I am of the view that the warrantless search of automobile parts located in defendants' junkyard did not run afoul of the constitutional proscription against unreasonable searches and seizures (*Colonnade Corp. v United States, supra; United States v Biswell, supra*).

Defendants further argue that even if the junkyard industry is subject to warrantless administrative searches, section 436 of the New York City Charter, which authorizes such searches, is not, as required, "carefully limited in time, place, and scope" (*United States v Biswell, supra*, p 315). With regard to scope, defendants argue that the statute does not limit the warrantless administrative search "to records required to be kept and of the regulated merchandise", but authorizes a general search or examination of "persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession" (NY City Charter, § 436). With respect to time, defendants argue that the statute contains no

limitation on the hours during which a warrantless administrative search of a junkyard may be conducted.

I disagree with defendants' arguments.

Even assuming, without deciding, that section 436 of the New York City Charter is unconstitutionally broad with respect to time, place and scope of warrantless administrative searches of junkyards,[2] defendants have no standing under the facts and circumstances of this case to raise this issue. Under settled standing principles, those who challenge a statute as unconstitutional must demonstrate actual or threatened injury to a protected right (see *Duke Power Co. v Carolina Environmental Study Group,* 438 US 59; *People v Parker,* 41 NY2d 21; *Matter of Donohue v Cornelius,* 17 NY2d 390, 397; *People v Merolla,* 9 NY2d 62) and that they have been aggrieved by the unconstitutional feature of the statute (see *Ulster County Ct. v Allen,* 442 US 140; *Oriental Blvd. Co. v Heller,* 27 NY2d 212; *People v Beakes Dairy Co.,* 222 NY 416). The undisputed facts are that the search was in fact conducted during a reasonable time, i.e., during normal business hours, and was reasonable in scope since it was directed at the automobile parts located in the junkyard.

I therefore vote to affirm the judgments of conviction.

MOLLEN, P. J., and BROWN, J., concur with TITONE, J.; MANGANO, J., dissents and votes to affirm the judgments appealed from, in an opinion in which WEINSTEIN, J., concurs.

Two judgments (one as to each defendant) of the Supreme Court, Kings County, rendered March 1, 1982 and March 12, 1982, respectively, reversed, on the law and the facts, motion to suppress granted to the extent that all physical evidence obtained as a result of the entry into Economy Auto Salvage on February 12, 1979 and the

2. The People argue that subdivision d of section B32-132.0 of the Administrative Code of the City of New York provides that administrative searches are to be conducted during "all reasonable times". However, a review of the language of that section indicates that it speaks only with regard to an inspection of a certain record book which is required to be kept by every dealer in secondhand articles and does not speak at all about administrative searches and inspections of merchandise or inventory.

subsequent search conducted pursuant to a search warrant issued on February 13, 1979 is suppressed, and the matters are remitted to the Supreme Court, Kings County, for further proceedings.