OPINION OF THE COURT
Lewis L. Douglass, J.
On May 12, 1983, defendant Burger moved to suppress physical evidence seized from his business premises on the grounds that subdivision 5 of section 415-a of the Vehicle and Traffic Law was unconstitutional. That motion was denied, after a hearing, in a decision by this court dated April 12, 1984.
On April 30,1984, the Appellate Division decided People v Pace (101 AD2d 336). Alleging that the People v Pace (supra) decision requires a result contrary to that reached by this court in the suppression hearing, defendant requested a renewal and reargument of the previously denied suppression motion and asked for proper and equitable relief. In consideration of the relevant issues of law *710 developed by the Appellate Division in People v Pace (supra), reargument was granted.
FACTS
Defendant Burger is in the auto junkyard business. His business premises are an open yard containing vehicles and parts of vehicles. His business consists of dismantling vehicles and selling the vehicle parts.
Police officers assigned to the Auto Crimes Division, which generally handles inspections of auto junkyards and whose officers have received special training, conducted an inspection of the defendant’s yard. Upon this inspection, the officers found that the defendant did not have a “police book”, which all auto junkyards are required to keep. (See Vehicle and Traffic Law, § 415-a, subd 5, par [a].) Continuing their inspection of the yard, the officers gave the police radio dispatcher the VIN number of a vehicle in the defendant’s yard and received information that the vehicle was stolen. Subsequently, the officers arrested the defendant and seized the stolen property.
The issue on reargument is whether the officers of the Auto Crimes Division had the power to enter the defendant’s yard and conduct an inspection in the manner and under the circumstances described above.
SUBDIVISION 5 OF SECTION 415-A OF THE VEHICLE AND TRAFFIC LAW
Subdivision 5 of section 415-a of the Vehicle and Traffic Law states that, “[u]pon request of an agent of the commissioner or of any police officer * * * a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this statute”.
In the original suppression hearing, this court found that subdivision 5 of section 415-a of the Vehicle and Traffic Law was constitutional. The statute was found to be limited in time, place and scope because the inspection is done during “regular business hours”, on “all motor vehicles, trailers and major component parts thereof”, and “only those vehicles or parts subject to the record-keeping requirement”.
*711 This court also found that defendant’s auto junkyard business was a member of a “pervasively regulated” industry. As a member of a pervasively regulated industry, defendant’s business may be subjected to warrantless inspections (Donovan v Dewey, 452 US 595; United States v Biswell, 406 US 311; Colonnade Corp. v United States, 397 US 72; People v Rizzo, 40 NY2d 425). That is exactly what occurred in this case. Officers of the Auto Crimes Division entered defendant’s auto junkyard to conduct a warrant-less inspection.
On reargument, defendant alleges that footnote 1* of the majority opinion in People v Pace (101 AD2d 336, supra) requires the officers to seek a search warrant when the auto junkyard does not produce a police book. The court finds this argument unpersuasive. The footnote merely states that the court did not apply subdivision 5 of section 415-a in People v Pace (supra). The Appellate Division pointed to the lack of a police book as further evidence that, in that case, the police officers were not conducting an administrative inspection but gathering evidence for criminal prosecution.
Further support for rejection of defendant’s allegation is found in the wording and intent of subdivision 5 of section 415-a of the Vehicle and Traffic Law. The statute expressly states that an agent or police officer may examine the records, any vehicles or parts of vehicles which are subject to the record-keeping requirements of the statute. The presence of a police book is not given as a prerequisite to a warrantless inspection of vehicles or parts of vehicles. Obviously, to require a warrant for an inspection of the items in the yard whenever there is no police book would hinder the power of the officers and frustrate the purpose of the statute, which is to discourage auto junkyards from dealing in stolen goods. This concern was well put in People v Tinneny (99 Misc 2d 962, 969-970), where the court stated the following: “It is unavailing for defendant to *712 contend that only his records but not his inventory were subject to inspection. The purpose of the record keeping is to insure that vehicles or the parts thereof are lawfully dealt with, hence deterring the acquisition and disposition of stolen items. Without the ability to substantiate statutory compliance by visual examination of the defendant’s inventory, the intent of the statute, requiring the keeping of the records would be frustrated if not rendered entirely nugatory.”
Although it seems proper to find that subdivision 5 of section 415-a of the Vehicle and Traffic Law authorized the Auto Crimes Division officers’ inspection of the defendant’s yard, this court need not decide this case on subdivision 5 of section 415-a alone. The District Attorney has alleged that, both subdivision 5 of section 415-a of the Vehicle and Traffic Law and section 436 of the New York City Charter permit this inspection.
SECTION 436 OF THE NEW YORK CITY CHARTER
Section 436 of the New York City Charter, which is entitled: “Powers over certain trades”, provides the following: “The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, dealers in second-hand merchandise or auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession. A refusal or neglect to comply in any respect with the provisions of this section on the part of any pawnbroker, vendor, junkshop keeper, junk boatman, cartman, dealer in second-hand merchandise and auctioneer, or any clerk or employee of any thereof shall be triable by a judge of the criminal court and punishable by not more than thirty days’ imprisonment, or by a fine of not more than fifty dollars, or both.”
In People v Pace (101 AD2d 336, supra), the Appellate Division examined the authority of the police under section 436 of the New York City Charter. In that case, the officers were checking the registration of an automobile when a truck carrying a portion of a car body passed by. When the *713 officers noticed that the VIN plate was removed from the car body, they placed the truck’s driver under arrest. At that point, a truck carrying two front ends of late model cars passed by. The officers discovered that the parts came from Economy Auto Salvage, a company owned by the two defendants in that case. When the officers arrived at Economy Auto Salvage, they were told that the police book had been stolen. The officers then “undertook to survey the yard, not for the purposes of an administrative inspection but expressly to gather evidence of a crime.” (101 AD2d, at p 338.) The court concluded that “[b]ecause we find that the search undertaken here was not for administrative purposes, we hold that the statute can have no application and reverse.” (101 AD2d, at p 337.) The court’s decision was based on the fact that the police officers were on a “mission * * * to gather evidence of a crime rather than to administer any regulatory scheme.” (101 AD2d, at p 340.) Judge Mangano’s dissent points out that, “Although not expressly stated in the majority opinion, it clearly appears that the majority is of the view that the police possessed probable cause to search the junkyard and relied on the pretext of an administrative search to excuse their failure to obtain a search warrant.” (101 AD2d, at p 343.) Clearly, the holding in People v Pace (supra) is that a warrant is not required for an administrative inspection but is required when the inspection is actually a quest for evidence to be used in a criminal prosecution.
The facts in the present case materially differ from the facts in People v Pace (supra). First of all, the officers in this case were assigned to the Auto Crimes Division, but in People v Pace (supra), they were regular police officers. Understandably, it is much better, in terms of protecting the defendant’s rights, to allow a specialized unit the authority to invade the privacy of a pervasively regulated industry than it is to allow all police officers to have such powers. Also, the fact that they were Auto Crimes Division officers tends to disprove the argument that the administrative inspection was a pretext for a criminal investigation. Since these officers are assigned to the division that carries out inspections of auto junkyards, it is logical to believe that they were actually conducting an administra *714 tive inspection when they showed up at the defendant’s place of business.
Also, the lack of evidence of any arousal of suspicion on the part of the officers indicates that there was no reason to gather evidence of a crime. The officers did not stop any trucks or notice any missing VIN plates before going to the defendant’s yard. Indeed, when the officers arrived at the defendant’s yard, they had no reason to believe that the defendant may be dealing in stolen goods. The fact that the defendant was found to be in possession of stolen property does not prove that the officers entered the yard in order to find stolen property.
The defendant stressed the fact that the officers had no contact with the Department of Motor Vehicles and that there was no set procedure for the inspection of auto junkyards. Both of these factors are irrelevant. The statute expressly states that the police commissioner has the power to administer section 436. Therefore, the officers of the Auto Crimes Division did not have to contact the Department of Motor Vehicles, or any other agency, before conducting an inspection of the defendant’s business.
As for the procedure used, it does not run contrary to section 436. Indeed, there is no required procedure to be followed, and the fact that the officers did not have a set procedure for making the inspections does not diminish their power under section 436 of the New York City Charter. Cases that have examined the procedures for regulating the auto junkyard industry have concluded that, when a person enters such a pervasively regulated industry, he does so with the knowledge that he will be subjected to the supervision of the State (People v Pace, 111 Misc 2d 488; People v Tinneny, 99 Misc 2d 962, supra). The procedure used in the present case is an acceptable form of such supervision.
Defendant argued that an administrative warrant would protect the limited privacy rights of junkyard owners. Under an administrative warrant the officers would gain access to the junkyard only if they showed, under a less than probable cause standard, that the inspection was in pursuit of an administrative plan (.People v Pace, 101 AD2d 336, supra). The Supreme Court has approved the concept *715 of an administrative warrant (Marshall v Barlow’s, Inc., 436 US 307), but New York does not require officers to seek a warrant before conducting an administrative inspection of an auto junkyard. Therefore, the entry onto defendant’s yard is permitted by section 436 of the New York City Charter as a part of an administrative inspection of defendant’s business.
Once on the premises, the officers inspected the “articles of merchandise” as authorized under section 436. The lack of a police book is irrelevant when applying section 436 of the New York City Charter rather than subdivision 5 of section 415-a of the Vehicle and Traffic Law.
When the officers discovered that the vehicle was stolen, they had reasonable cause to arrest defendant Burger for possession of stolen property. The vehicle, as stolen property in plain view, was properly seized as incident to a lawful arrest (People v Tinneny, supra; People v Brosnan, 32 NY2d 254).
In conclusion, this court finds that the Auto Crimes Division officers’ entrance onto defendant’s yard and inspection of the items in the yard were authorized by section 436 of the New York City Charter as an administrative inspection. In addition, defendant’s arrest, and seizure of the stolen property, were proper.
Therefore, defendant’s motion to suppress is denied.

 The People v Pace (supra) footnote reads, “Subdivision 5 of section 415-a of the Vehicle and Traffic Law, the statute under which the police officers said they were acting, has no application. While this section requires dismantlers to keep a police book, the book was missing when the officers entered and it would thus have been impossible for the officers to exercise the alleged implied authority to compare the book entries to the contents of the yard.”