OPINION OF THE COURT
Nicholas L. Pitaro, J.
The defendant moves to suppress physical evidence and statements. He is charged in a one-count indictment with the crime of criminal possession of stolen property in the first degree. A combined Mapp-Huntley hearing was held before this court on December 10,1984. Police Officer Timothy Connolly testified on behalf of the People. No witnesses testified on behalf of the defendant. From the testimony adduced at the hearing, this court makes the following findings of fact and conclusions of law:
FINDINGS OF FACT
The facts of this case are relatively simple and not in dispute. On June 21,1984, Police Officer Timothy Connolly was on duty, and was assigned to the Auto Crimes Division. He stated that part of his duties in that Division were to conduct investigations and routine administrative inspections of licensed premises, approximately two days a week. At approximately 1:00 p.m. on the date in question, Officer Connolly went to an automobile collision repair shop known as Classic Collision located at 18-65 41st Street in the County of Queens. He stated that he went to this business establishment for the purpose of conducting an administrative inspection. When he arrived at the location, the officer proceeded to the vicinity of the office near the front of the shop. The defendant, who was the owner of the business, was not *184 present and the officer waited for the defendant to arrive. Upon the defendant’s arrival, Officer Connolly asked him to produce the permits, licenses, and books for the business. The defendant complied with the request.
Officer Connolly also stated that, in addition to the routine administrative inspection, his duties also include the gathering of vehicle identification numbers (VIN) of auto parts and autos, so that same may be run through the computer to ascertain if such autos or auto parts correspond to the VIN’s of stolen vehicles.
After the defendant had produced his books and records requested by Officer Connolly, said officer proceeded to walk through the auto shop and went to the rear of the shop, through a connecting door and into another section of said shop. The officer had not obtained permission to walk or inspect other parts of the shop. He did not have a search warrant. During his testimony the officer stated that he walked through the shop with the belief that he had the authority to do so under the law and cited New York City Charter §§ 435 and 436 as authority for his actions. He stated that he was conducting a “random sampling” and not a search.
While walking through the shop, after having concluded his administrative inspection of the books and records, Officer Connolly discovered a 1981 Chevy Corvette in the rear of the establishment. He asked the defendant for the paperwork for the Corvette and the defendant stated that he had no paperwork for it. Officer Connolly determined that the vehicle was stolen and thereupon placed the defendant under arrest. He advised the defendant of his Miranda rights but did not question the defendant. The defendant volunteered that the vehicle was brought in by someone who was a customer on an unmarked flhtbed truck, and that the customer was going to come back withlparts for its repair. The vehicle and its keys were vouchered.
CONCLUSIONS OF LAW
At the outset, this court observes that there are well-settled principles of law applicable to a search of a private commercial business. As noted in the recent case of People v Pace (101 AD2d 336, 338-339 [2d Dept 1984]): “The constitutional prohibitions against unreasonable searches and seizures apply, of course, to administrative inspections of private commercial property (Marshall v Barlow’s Inc., 436 US 307; See v City of Seattle, 387 US 541; Sokolov v Village of Freeport, 52 NY2d 341). One engaged in an industry subject to a long-standing complex and pervasive *185 pattern of ‘close supervision and inspection’ (Colonnade Corp. v United States, 397 US 72, 77), however, possesses a substantially diminished expectation of privacy and ‘this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections’ (Donovan v Dewey, 452 US 594, 599; see, e.g., United States v Biswell, 406 US 311; Colonnade Corp. v United States, supra; People v Rizzo, 40 NY2d 425).”
The People argue in this case that the “administrative inspection” of the auto body repair shop which took place herein was authorized by New York City Charter § 436 and by Vehicle and Traffic Law § 415-a. The People contend that since auto body repairmen deal regularly in secondhand merchandise, New York City Charter § 436 authorizes an administrative inspection, and further, that since auto body repairmen frequently dismantle vehicles for parts suitable and cheaper for use in making auto body repairs, Vehicle and Traffic Law § 415-a authorizes the action of the officer herein as an administrative inspection.
The defendant contends that the above-specified sections of the New York City Charter and Vehicle and Traffic Law do not apply to a motor vehicle repair shop which is regulated pursuant to Vehicle and Traffic Law § 398; that therefore a warrantless search of defendant’s property was not authorized; and that the search conducted herein violated defendant’s constitutional rights. Accordingly, the defendant argues that his motion to suppress the search and seizure of the physical property, to wit: the Chevy Corvette and its keys, must be granted and that, furthermore, defendant’s subsequent statements made after his arrest must be suppressed as the product of an unlawful arrest.
New York City Charter § 436 provides in relevant part as follows: “The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cart-men, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession. A refusal or neglect to comply in any respect with the provisions of this section on the part of any pawnbroker, vendor, junkshop keeper, junk boatman, cartman, dealer in second-hand merchandise or auctioneer, or any clerk or employee of any thereof shall be triable by a judge of the criminal court and punishable by not more than *186 thirty days’ imprisonment, or by a fine of not more than fifty dollars, or both.” (Emphasis added.)
Vehicle and Traffic Law § 415-a (5) which applies to vehicle dismantlers provides in relevant part as follows: “(a) * * * Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession * * * Upon request of an agent of the commissioner or of any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises * * * The failure to produce such records or to permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor.” (Emphasis added.)
It is this court’s conclusion that a warrantless “administrative inspection” of defendant’s business establishment conducted after the defendant had produced his books and records for inspection as requested by Officer Connolly, and after Officer Connolly had fully completed the inspection of the books and records, was not authorized by either New York City Charter § 436 or by Vehicle and Traffic Law § 415-a. The fact that auto body repairmen often use secondhand merchandise to repair damaged automobile bodies and frames does not make such a repair shop a “dealer in second-hand merchandise” as defined by and for purposes of New York City Charter § 436. The fact that auto body repairmen frequently dismantle vehicles for parts suitable and cheaper (than new parts) for making auto body repairs does not make such a repair shop a “junkyard” for which a shop-wide administrative inspection would be authorized by New York City Charter § 436. Neither does it make such a repair shop a “vehicle dismantler” for which such an administrative inspection would be authorized by Vehicle and Traffic Law § 415-a. Said section defines a vehicle dismantler as “any person who is engaged in the business of acquiring motor vehicles or trailers for the purpose of dismantling the same for parts or reselling such vehicles as scrap.” (Vehicle and Traffic Law § 415-a [1].) No evidence was adduced at the hearing nor was any case law submitted to the court that would support the *187 argument that defendant’s collision repair shop was a vehicle dismantler as defined by Vehicle and Traffic Law § 415-a.
The court further observes that as to the Colonnade-Biswell exception applicable to junkyard and vehicle dismantling industries which would support warrantless administrative searches of these industries, an auto diagnostic and repair clinic has been held to be not within the Colonnade-Biswell exception. (See, dissenting opn in People v Pace, supra, at p 343, distinguishing State v Galio, 92 NM 266, 584 P2d 44.)
It is a matter of common knowledge, not only to our law enforcement authorities but to the general public as well, that there are a great number of thriving illegal stolen car operations and that numerous stolen cars are predestined for “chop-shops” to be used as parts. Auto thefts have reached epidemic proportions and this court believes that perhaps the time has come for legislative action to authorize appropriate physical administrative inspections of collision repair shops. However, at this time, this court is constrained to apply the existing law and cannot reach a different result.
Accordingly, defendant’s motion to suppress physical evidence is granted. Such evidence was illegally seized. Officer Connolly had admittedly concluded his “administrative inspection” of the books and records near the front of the shop. Thereafter without asking for, or obtaining permission to do so, and not being in possession of a search warrant, he decided to conduct a physical search into the rear portions of the shop. Such a search was not authorized by law and constituted an unconstitutional search of defendant’s business premises.
As to defendant’s statements as to how he came into possession of the Chevy Corvette, while such statements were not the product of police interrogation they were certainly the product of an unlawful arrest of the defendant predicated on his possession of the stolen vehicle. Such statements must be suppressed as the fruit of an unlawful arrest. (See, Dunaway v New York, 442 US 200 [1979].)
Accordingly, defendant’s motion to suppress his statements made after his arrest as to how he came into possession of the vehicle in question, to wit: the Chevy Corvette, is granted.