■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL BRIGANTE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County (Vinik, J.), rendered July 12, 1984, convicting him of unlawfully offering for sale motor vehicle parts with altered vehicle identification numbers, criminal possession of stolen property in the third degree, and criminal possession of a weapon in the fourth degree, upon a jury verdict, and sentencing him to three concurrent terms of six months' imprisonment, to run concurrent to a five-year term of probation. The appeal brings up for review (1) the denial (Broomer, J.), after a hearing, of defendant's motion to suppress physical evidence and (2) the denial (Broomer, J.), without a hearing, of defendant's motion pursuant to CPL 330.30 (1) to set aside the jury verdict.

Matter remitted to Criminal Term to hear and report, after a reopened suppression hearing conducted in accordance herewith, and appeal held in abeyance in the interim. The court shall file its report with all convenient speed.

Defendant's conviction stems from a warrantless search of an automotive parts junkyard known as M & M Auto Parts conducted by the police during the morning of January 5, 1983. Defendant is the president of the corporation which owns the junkyard.

The People took the position that the search was a routine administrative search of an auto parts junkyard which was sanctioned by, and conducted pursuant to, Vehicle and Traffic Law § 415-a (5) and New York City Charter § 436.

In this regard, the People at the suppression hearing offered the testimony of the two police officers, Johnson and Cunningham, who were involved in the search. Their testimony indicated that (1) the search was commenced at about 11:30 A.M., and was conducted by a team of six or seven officers, including a sergeant, (2) the Auto Crime Division, to which these officers were assigned, conducted three to four administrative searches per month; (3) the supervising sergeant (who did not testify at the hearing) picked the auto parts junkyards which were to be searched; and (4) the defendant's auto parts junkyard was, to the officers' knowledge, picked completely at random.

In denying the defendant's motion to suppress, Criminal Term held that (1) the auto parts junkyard industry was a "pervasively regulated" one, which was subject to warrantless administrative searches and (2) the instant warrantless administrative search of defendant's auto parts junkyard was conducted pursuant to a "valid statutory scheme".

During the course of the trial, the People introduced evidence, through the testimony of Officer Entrieri (who did not testify at the suppression hearing) that (1) at 9:30 A.M., on January 5, 1983, i.e., before the instant search was conducted, a van driven by one Eliseo Benitez was stopped due to several traffic violations and (2) an inspection of the van revealed an automobile engine for which Benitez showed a bill of sale bearing the words "M&M Auto Wrecking". Entrieri copied down the vehicle identification number which was on the engine, and took Benitez to the police precinct where several traffic summons were issued to him. Benitez left the precinct with his van and the engine, but was arrested approximately 15 to 20 minutes later, after the police determined that the engine had been stolen. Entrieri further testified that the details of this arrest were communicated to the Auto Crime Division. Based on this trial testimony, and an examination of Entrieri's memo book, defense counsel elicited from Officer Johnson, for the first time at trial, the following testimony regarding Sergeant Tabron, who chose the site of the administrative search and also supervised and accompanied Johnson and the rest of the team during the actual search:

"Q You started out that particular morning with Sergeant Tabron?

"A Yes.

"Q Were you aware that Sergeant Tabron had information concerning a particular automobile that was given to him by a Police Officer Entrieri?

"A No.

"Q He didn't tell you that at all?

"A No.

"Q There was no mention of a fellow named Eliseo Benitez that morning?

"A No * * *

"Q Did he ever tell you later that there was a fellow named Eliseo Benitez?

"A Later that night, yes.

"Q That night?

"A Yes * * *

"Q Well, you're saying that you found that out the day of the arrest; isn't that correct?

"A Yes.

"Q So you knew long before we held the hearing in court that one of your brother officers, at the time he went to the scene, had information concerning that location; isn't that right?

"A Yes * * *

"Q You found out that Sergeant Tabron went to that location for a particular reason because he had particular information; didn't he?

"A Not before we went there. I didn't know before.

"Q But you knew that by the date of the hearing; didn't you?

"A When the hearing was—yes. I knew that, yes."

Defense counsel then moved to "open" the suppression hearing, arguing that the suppression court would not have ruled adversely to defendant had it known that "the very sergeant who led the routine investigation * * * had knowledge of what he thought was criminal activity relating to those premises".

The trial court denied defense counsel's application without prejudice to any postconviction motions counsel wished to pursue.

Subsequent to the jury verdict, defense counsel moved, pursuant to CPL 330.30 (1), to set aside the jury verdict. In support of the motion, defense counsel alerted the court to the

decision of this court in *People v Pace* (101 AD2d 336, 340, *affd* 65 NY2d 684), wherein the fruits of a purported warrantless administrative search were suppressed due to the fact that the "police officers expressly maintained that their mission was to gather evidence of a crime rather than to administer any regulatory scheme".

Criminal Term (Broomer, J.) denied this motion without a hearing, holding that there was "overwhelming support in the hearing minutes for the conclusion that the officers here (unlike *Pace)* went to the defendant's junkyard purely and simply to administer a constitutionally valid inspection of his books to insure compliance with the regulatory scheme."

In our view, defendant is entitled to a reopened suppression hearing.

In *People v Pace (supra,* at p 340), Justice (now Court of Appeals Judge) Titone, speaking for the majority of this court, wrote as follows: "When a search is not undertaken as a routine regulatory inspection, the administrative search rationale is simply inapplicable (see *United States v Russo,* 517 F Supp 83; *United States v Lawson,* 502 F Supp 158, 165; *United States v Anile,* 352 F Supp 14, 17; *Commonwealth v Lipomi,* 385 Mass 370, —, 432 NE2d 86, 91; *State v Sidebotham,* 124 NH 682, 474 A2d 1377, 35 Crim L Rptr 2077; Hall, Search and Seizure, § 11:8, 1983 Cum Supp, pp 204-205). As so well put in *United States v Lawson (supra,* p 165), 'once the purpose behind the search shifts from administrative compliance to a quest for evidence to be used in a criminal prosecution, the government may constitutionally enter the premises only upon securing a warrant supported by full probable cause' ". In the case at bar, defense counsel first learned during the trial that the sergeant who chose the site involved and supervised the administrative search may have had knowledge, at the time of the search, that criminal activity was ongoing at the defendant's junkyard. Under these circumstances, the warrantless administrative search herein may have been merely a pretext to disguise a quest for evidence to be used in a criminal prosecution *(see, People v Pace, supra).* This question can only be resolved by a full examination of Sergeant Tabron at a reopened suppression hearing. Accordingly, the matter must be remitted to Criminal Term for this purpose. Mangano, J. P., Bracken, O'Connor and Weinstein, JJ., concur.